**T. P. JERRY, Jr., Plaintiff in Error,**
v.
**The STATE of Oklahoma, Defendant in Error.**
**No. A–16547.**

Court of Criminal Appeals of Oklahoma.
March 8, 1972.
Rehearing Denied May 8, 1972.

The Legal Aid Society of Oklahoma County, Inc., Jack Pratt, Staff Atty., (William Clyde Bowlby, Legal Intern), Legal Aid Society of Okl. County, Inc., Oklahoma City, for plaintiff in error.

Larry Derryberry, Atty. Gen., Ray Naifeh, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge:

T. P. Jerry, Jr., hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County, Oklahoma, for the offense of Robbery in the First Degree, After Former Conviction of a Felony; his punishment was fixed at seventy-five (75) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Fred Nelson testified that on June 22, 1966, he was employed at Tom's Market, located on Eastern Street in Oklahoma City, Oklahoma. At approximately 6:05 a. m., while he was filling out a report, he was approached from the rear by a person who he identified in court as the defendant. The defendant placed some hard object to Nelson's back and stated, "Let me have it." (Tr. 7) He walked toward the cash register followed by the defendant. The defendant told him to open the cash register and give him everything. Nelson emptied the cash drawer of the register, and the defendant stated, "Where's the safe?". He then demanded that Nelson give him everything in the safe. Defendant then stated, "What is in those sacks?" and Nelson replied, "A little change." Defendant then stated, "I told you to give me all of it, didn't I?". (Tr. 8) Defendant then marched him toward the front of the store, whereupon the defendant ran from the premises. He last observed the defendant running across a vacant lot.

Alfred Peterson testified that he was at Tom's Market shortly after 6:00 on the morning in question. As Peterson was leaving the store, he observed the defendant walking toward the entrance of the market.

Millard Green testified that he was employed by the Daily Oklahoman and Times and was delivering a paper route on Northeast 18th Street on the morning in question. He observed a black and white older model Mercury parked approximately one block from Tom's Market near an empty lot, with the right hand door open. He continued to make his deliveries and next observed the car going past him at an excessive rate of speed. He was able to obtain the tag number, XW-6133, which was given to the police.

Charles McKinzie testified that in June of 1966, he owned a 1955 Mercury bearing license number XW-6133. He further testified that he loaned the Mercury to the defendant the evening of June 21, 1966. The vehicle was returned by the defendant at approximately 7:30 the following morning.

Officer Hill testified that on June 28, 1966, he observed the 1955 Mercury, tag number XW-6133, parked in front of 708 Northeast First Street. He ascertained that the car belonged to Charles McKinzie, who was taken to the police station and questioned. After having a conversation with McKinzie, the officers were taken by McKinzie to an address in Oklahoma City where the defendant was found and placed under arrest.

For the defense, Officer Hill was recalled and testified that he did not find any sum of money at the apartment where the defendant was arrested. He identified Defendant's Exhibit One as a report which he had made, which reflected that the Mercury automobile, tag number XW-6133, had been used reportedly in three different robberies.

The defendant did not testify, nor was any additional evidence offered in his behalf.

The first proposition asserts the trial court erred in overruling defendant's motion for a continuance in order to secure his only witness, thereby depriving defendant of a fair trial. The Record reflects that after the State rested, the following transpired outside the presence of the jury:

"THE COURT: Is your witness here?

"MR. COX: No, she isn't here yet.

"THE COURT: We have been in recess for an hour and we will proceed. Call the jury.

"MR. COX: For the record, I would like to have an objection.

"Comes now the defendant, T. P. Jerry, Jr., by and through his attorney, Charles F. Cox, and objects to the reconvening of the trial on the grounds that through no fault of the defendant and through an unavoidable delay in locating the witness, has caused the defendant to be prejudiced by continuing the trial without this witness.

"THE COURT: Mr. Cox, did you subpoena this witness?

"MR. COX: No, Your Honor, it wasn't anticipated it would be necessary.

"THE COURT: The Court took a fifteen minute recess and at the end of that time gave you forty-five more minutes and your witness was at St. Anthony's Hospital.

"MR. COX: She is at Veterans Hospital. I made a mistake.

"THE COURT: And, you sent for her about 3:00 o'clock.

"MR. COX: Right, sir. We didn't anticipate needing the witness." (Tr. 83–84)

In the early case of Musgraves v. State, 3 Okl.Cr. 421, 106 P. 544, this Court stated:

"No reason is given why process was not procured for the witness at an earlier date. The law requires diligence in these matters. A defendant cannot sit still and wait until just before his trial before he begins to get ready for trial. He must be diligent; and, if special reasons exist upon which a reasonably prudent man would rely, which would cause him to fail to exercise the utmost diligence, he must state these reasons in his motion for a continuance as an excuse for not having exercised the utmost diligence. No such

reasons are stated in the motion in this case. Continuances are not granted as matters of favor or convenience. Defendants must learn that it is a very serious matter to violate the laws of Oklahoma, and that when they are charged with such conduct, they must be diligent in preparing their defense. There was no error in the action of the trial court in overruling the motion for a continuance."

In the instant case, we are of the opinion that the trial court did not abuse its discretion in denying defendant's request for continuance absent showing of sufficient diligence and having the witness available to testify.

■ The second proposition contends that "the state failed to prove an essential element of its case, to-wit, that defendant was the individual who committed the alleged offense and it was error to overrule defendant's demurrer to evidence and motion for directed verdict." We are of the opinion that this proposition is patently frivolous. The victim testified that defendant was in the store from ten to fifteen minutes, and on cross-examination was asked the following question:

"Q. You are absolutely positive without any doubt whatsoever in your mind at all that this defendant is the same man that robbed you?

"A. Yes, that's him.

"Q. Absolutely no doubt in your mind?

"A. No, there is sure not. (Tr. 22)

Defendant was further identified by the witness Peterson as being outside the store just prior to the robbery. Upon such evidence, the question of whether the defendant was involved in the armed robbery was a question of fact for the jury.

■■ Defendant's third, fourth and fifth propositions assert that the court erred in giving instructions number four, five and nine. The Record reflects at the conclusion of the reception of evidence, the following transpired:

"THE COURT: These are the proposed Instructions.

"(Thereupon, the attorneys looked over the Instructions.)

"MR. McKINNEY: The Instructions are satisfactory to the State.

"MR. COX: They are satisfactory.

"THE COURT: Does either side have any written, requested instructions?

"MR. McKINNEY: The State does not.

"MR. COX: The defendant does not." (Tr. 89–90)

We have consistently held that where counsel is not satisfied with instructions that are given, or desires the court to give any particular instruction, or to more definitely or sufficiently state any proposition embraced in the instructions, the duty of counsel is to prepare and present to the court such desired instructions and request that they be given. In the absence of such request, the Court of Criminal Appeals will not reverse a case if instructions generally cover the subject matter of inquiry. Schapansky v. State, Okl.Cr., 478 P.2d 912. We are of the opinion that the instructions in the instant case generally cover the subject matter of inquiry, and further that defendant's attempt to raise these propositions for the first time on appeal, is not timely. We, therefore, find these propositions to be without merit.

■ The sixth proposition contends that "it was error for defendant to be subjected to a second trial for the same offense and as such amounts to double jeopardy and/or a denial of defendant's constitutional right to due process of law." The Record reflects that the defendant's original conviction was vacated by this Court for the reason that the Court Reporter was unable to make and prepare a casemade of the trial proceedings. The cause was remanded for a new trial. In Sussman v. District Court of Oklahoma County, Okl.Cr., 455 P.2d 724, we stated:

"At the same time, jeopardy is not regarded as having come to an end so as

to bar a second trial in those cases where unforeseeable circumstances arise during the first trial, such as the failure of the jury to agree on a verdict; or, *when the first trial is set aside on appeal,* which is usually at defendant's request." (Emphasis added)

We, therefore, find this proposition to be without merit.

■ The seventh proposition contends that it was error for the jury to return a guilty verdict after only fourteen and one-half (14½) minutes of deliberation. Defendant argues under this proposition that "the jury was not faced with a case where the issues were so simple or where the evidence of guilt so overwhelming, that only 14½ minutes was required for their deliberation. To the contrary, the jury was faced with complex issues and conflicting and confusing evidence." We fail to concur with defendant's opinion as to the conflicting and confusing evidence. It is the opinion of this Court that the evidence of defendant's guilt is overwhelming, and that it was not error for the jury to return a guilty verdict in the relatively short period of deliberation.

■ The eighth proposition asserts that it was reversible error for the trial court to set·defendant's appeal bond at twenty-five thousand dollars ($25,000.00) in light of defendant's indigency, as such amounts to a denial of bail and violates defendant's constitutional right to equal protection of the law. Suffice it to say that we are of the opinion that a twenty-five thousand dollar ($25,000.00) appeal bond is not extreme or unreasonable in light of the sentence of seventy-five (75) years imprisonment. We, therefore, find this proposition to be without merit.

■■ The next proposition contends that the trial court erred in allowing a sentence of seventy-five (75) years to stand, because on retrial, after a conviction for the same offense has been reversed, imposition of a greater penalty than was imposed at the first trial, without reason, constitutes double jeopardy. Defendant cites as authority, North Carolina v. Pearce, Simpson v. Rice, 395 U.S. 711, 89 S.Ct. 2072, 23 L. Ed.2d 656, and Fillmore v. State, Okl.Cr., 483 P.2d 750. In *Pearce,* supra, the United States Supreme Court, through Justice Stewart, stated:

"We hold, therefore, that neither the double jeopardy provision nor the Equal Protection Clause imposes an absolute bar to a more severe sentence upon reconviction. A trial judge is not constitutionally precluded, in other words, from imposing a new sentence, whether greater or less than the original sentence, in the light of events subsequent to the first trial that may have thrown new light upon the defendant's 'life, health, habits, conduct, and mental and moral propensities.' * * *

" * * *

"Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing *judge.* (Emphasis added)

"In order to assure the absence of such a motivation, we have concluded that whenever a *judge* imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmately appear. * * * " (Emphasis added)

It is apparent that the United States Supreme Court in *Pearce,* supra, was attempting to prevent a judge (as distinguished from a jury in the instant case) from imposing a more severe sentence upon a defendant after a new trial absent objective information concerning the defendant's con-

duct occurring after the time of the original sentencing proceeding. In *Fillmore, supra,* this Court declined to expand the rule pronounced by the United States Supreme Court in *Pearce, supra,* to hold that in all cases a court could not on the second trial, impose a greater punishment than was assessed at the first trial. Notwithstanding the later case of Torbett v. State, Okl.Cr., 487 P.2d 357, we reaffirmed the holding of *Fillmore, supra,* that neither the double jeopardy provision nor the Equal Protection Clause of the Constitution imposes an absolute bar to a more severe sentence assessed by a jury upon reconviction at a second trial. *Torbett, supra,* is expressly overruled. We, therefore, find this proposition to be without merit.

■ The tenth proposition contends that the prejudicial conduct of the trial judge in congratulating the prosecuting attorney on his fourteen and one-half (14½) minute verdict was reversible error. We observe that the Record does not reflect whether such remark was in fact made by the trial judge in the presence of the jury. Defendant raised the matter for the first time when the jury returned to court, the following day, to hear the second stage of the proceedings. The Assistant District Attorney stated that "no such remark was made in the presence of the jury and ask that they be polled to the effect that they heard any such remark." (Tr. 92) The jury was subsequently polled by the defendant's attorney and each juror denied hearing the trial court's remark. Absent some showing that the jury heard the trial court's alleged remark, we cannot surmise that the defendant was prejudiced thereby.

■ The next proposition contends that the punishment is excessive and appears to have been given under the influence of passion and prejudice. The question of excessiveness of punishment must be determined by a study of all the facts and circumstances in each particular case. We have previously held that the Court of Criminal Appeals does not have the power to modify sentence, unless we can conscien-

tiously say that under all facts and circumstances, the sentence is so excessive as to shock the conscience of the Court. Roberts v. State, Okl.Cr., 473 P.2d 264. Considering this as defendant's second conviction for robbery, we cannot conscientiously say that the sentence imposed shocks the conscience of this Court.

The final proposition asserts that defendant was denied a fair trial because of the accumulation of errors and irregularities at the trial. We have carefully considered the entire Record and are of the opinion that the final proposition is without merit.

In keeping with the holding of the United States Supreme Court in *Rice, supra,* defendant is to be fully credited for the punishment already endured under the original sentence.

The judgment and sentence is affirmed.

SIMMS, Judge (specially concurring):

Torbett v. State, Okl.Cr., 487 P.2d 357 (1971), leaves one with the false impression that on retrial after a successful appeal from a conviction, the defendant cannot, under any circumstances, be given a greater sentence than that which he received at the first trial. Such a construction is clearly contrary to the express language of North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) which Judge Bussey cites in his opinion.

In stating the issue to be decided in *Pearce, supra,* Justice Stewart analyzed:

" * * * We turn, therefore, to consideration of the broader problem of what constitutional limitations there may be upon the general power of a judge to impose upon reconviction a longer prison sentence than the defendant originally received.

"Long-established constitutional doctrine makes clear that, beyond the requirement already discussed, the guarantee against double jeopardy *imposes no restrictions* upon the length of a sentence imposed upon reconviction. * * *" (Emphasis added)

A careful study of *Pearce*, supra, reflects, the Supreme Court of the United States was pronouncing two clear constitutionally sound edicts: First, that upon retrial and conviction, a defendant must be credited with time in custody awaiting retrial, and second, that a sentencing judge may not increase punishment on retrial after conviction by reason of retaliatory motivation. However, *Pearce*, supra, as Judge Bussey points out, does not preclude a judge from imposing a greater sentence after new trial following appeal, if the reasons therefore, alluded to in *Pearce,* supra, affirmatively appear in the record.

Even Mr. Justice Douglas, in his Separate Opinion in *Pearce,* supra, uses the following language:

" * * * In the second trial they were made to run the gantlet twice, *since the Court today holds that the penalties can be increased."* (Emphasis added)

I must agree with Judge Bussey that the restrictions of *Pearce*, supra, as relates to increased sentence on retrial after appeal, governs only sentences by judges, and not sentences imposed by juries.

BRETT, Judge (specially concurring):

I must agree that the thrust of North Carolina v. Pearce, supra, pertains to a sentence imposed by the trial judge; and, that under particular circumstances a second trial may result in a greater sentence, if the trial judge's reasons for such increase affirmatively appear in the record. However, I fail to see the need for that portion of this decision which states, *"Torbett,* supra, is expressly overruled." The Torbett case merely states, " * * * the court *should not* on the second trial impose a greater punishment than was assessed at the first trial." This principle is consistent with the rules of fundamental fairness, as expressed by the United States Supreme Court. Likewise, I fail to see the justification for the increase in this defendant's sentence. Therefore, while I agree that the record appears to sustain this conviction, I would modify the sentence at least to that received on defendant's first trial.