**Cleo HILL, Jr., Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–76–953.**

Court of Criminal Appeals of Oklahoma.

July 28, 1977.

Rehearing Denied Aug. 19, 1977.

Tom J. Laub, Okmulgee, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Donnie G. Pope, Legal Intern, for appellee.

## OPINION

BRETT, Judge:

Appellant Cleo Hill, Jr., hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Okmulgee County, Case No. CRF–75–218, for the offense of Robbery With Firearms, After Former Conviction of a Felony, in violation of 21 O.S.Supp.1973, § 801 and 21 O.S.1971, § 51. At the conclusion of a bifurcated jury trial his punishment was fixed at forty (40) years' imprisonment, and from this judgment and sentence a timely appeal has been filed.

The State's first witness was Sharon Daniels who testified that late in the afternoon of November 26, 1975, she was employed as a waitress at the Winchell's Donut Store located at 101 North Wood Drive in Okmulgee. At approximately 5:00 p. m. on that date, a man entered the establishment and ordered some donuts. While his order was being filled by Ms. Daniels he entered the restroom, and upon returning he opened his coat and pointed a sawed off shotgun at the witness. The man ordered Ms. Daniels to give him all the money in the cash register. Ms. Daniels immediately complied with this order, and then watched the man leave. The police were then called

and Ms. Daniels was shown photographs at the store by Detective Baker. Ms. Daniels selected a photograph of the defendant as the man who had just robbed her. At this point the witness identified in court the defendant as having been the robber.

Charles Talton was the second witness for the State. He stated that on November 26, 1975, he was an Okmulgee police officer and investigated the robbery at the donut shop. On cross-examination Officer Talton stated that Sharon Daniels had described the robber as having a scar on the left side of his face.

The last witness to testify for the State was Fred Baker. He stated that he had been a member of the Okmulgee Police Department for over 20 years, and currently held the rank of captain. On November 26, 1975, the witness investigated the robbery at the donut shop and showed six photographs of suspects to Sharon Daniels. Ms. Daniels then selected the photograph of the defendant.

At this point in the trial the State rested, and the jury was excused.

Defense counsel then demurred on grounds of insufficiency of the evidence. The demurrer was overruled by the trial court. Defense counsel then rested without presenting any evidence.

The defendant's first assignment of error is that the trial judge erred by refusing defendant's motion for a continuance. The general rule in Oklahoma with regard to the granting of continuances is that they are within the sound discretion of the trial court, and barring a clear abuse of discretion this Court will not interfere with the trial court's ruling on such a motion. *Gossett v. State,* Okl.Cr., 553 P.2d 215 (1976); and, *Wampler v. State,* Okl.Cr., 553 P.2d 198 (1976). In the case at bar the record shows that just prior to trial the defendant's trial attorney, Bill Barksdale moved for a continuance on the ground that a possible defense witness could not be located because the witness had recently left the Okmulgee area. The trial judge's response was as follows:

"THE COURT: Gentlemen, this case was filed in November, 1975, and the defendant was bound over in January of 1976. He has been confined to the County jail, as I understand it, for some time on this or another matter or both. In any event, he's there now. I have examined the file and in connection with subpoenas I note that at the defendant's request, he was given a continuance, I believe earlier. Am I not correct, Mr. Barksdale?

"MR. BARKSDALE: Yes, Your Honor, that was for the reason that he had been tried at the same term of Court.

"THE COURT: And so we'll deny the request and we'll deny the motion and in view of the fact that Mr. Hill is here and he's represented by very competent counsel, we'll proceed to trial. The motion is overruled."

After reading the record we observe that a lengthy period of time elapsed between the date charges were filed, December 3, 1975, and the date of trial, May 12, 1976. During this period of time the defendant had more than sufficient opportunity to make the necessary investigation and to subpoena witnesses. Furthermore, the record discloses that on March 26, 1976, the defendant was granted a continuance in this case so as not to be placed on trial before the same jury panel which would hear another case then pending against him. Since no witnesses were subpoenaed, the defendant has also failed to show that he made a diligent effort to secure the attendance of possible witnesses. As long ago as 1910, this Court in *Musgraves v. State,* 3 Okl.Cr. 421, 106 P. 544, 545, stated:

". . . No reason is given why process was not procured for the witness at an earlier date. The law requires diligence in these matters. A defendant cannot sit still and wait until just before his trial before he begins to get ready for trial. He must be diligent; and, if special reasons exist upon which a reasonably prudent man would rely, which would cause him to fail to exercise the utmost diligence, he must state these reasons in his motion for a continuance as an

excuse for not having exercised the utmost diligence. . . ."

We recently reaffirmed this rule in *Jerry v. State,* Okl.Cr., 496 P.2d 422 (1972). Under the circumstances of this case, we can find no abuse of discretion by the trial court, and the first assignment of error is, therefore, without merit.

■ For his second assignment of error, the defendant alleges two propositions. First, that the trial court erred in admitting the in court identification of Ms. Daniels because it was based on an improper lineup. Specifically, he claims that the photographic lineup shown Ms. Daniels shortly after the robbery was tainted because none of the men pictured, except the defendant, resembled the man who robbed her. In our opinion this proposition is patently frivolous. We have carefully examined the photographs and find that all of the men pictured have the same facial and body characteristics, are of the same race, and are all of the same approximate age. Furthermore, nothing appears in the record that would show that the police displayed these photographs to Ms. Daniels in any kind of suggestive manner. In *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the United States Supreme Court, speaking through Mr. Justice Harlan, held that:

". . . each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. . . ." (Citation omitted)

In light of the above holding and our prior determination that the lineup was not suggestive we dismiss this proposition as having no merit.

■ The second proposition by the defendant as part of his second assignment of error is that failure of the trial court to hold a hearing outside the jury's presence on the admissibility of the photographs resulted in prejudicial error. We dealt with this same contention in *Young v. State,* Okl.Cr., 531 P.2d 1403 (1975), where at page 1406 it is stated:

"Finally, under this proposition defendant alleges the trial court erred in not holding an evidentiary hearing outside the presence of the jury to determine whether the in-court identification was tainted. The record does not reflect that the defendant at any time prior to or during the course of the trial requested an evidentiary hearing on this matter. The defendant's right to have a hearing outside the presence of the jury is dependent upon his raising a timely objection to the in-court identification of the defendant. See, *Towning v. State,* Okl. Cr., 521 P.2d 415 (1974) and cases cited therein."

Nowhere in the record in the case at bar have we been able to find a request by defense counsel for an evidentiary hearing of this kind. Although defense counsel did object to the in court identification by Sharon Daniels, this objection was not made until the end of the State's case in chief. The objection was, therefore, not timely because the jury had already heard all of Ms. Daniels' testimony. For these reasons we find no error in the court's action and hold that defendant's second assignment of error is without merit.

The third assignment of error also concerns the photographs shown to Ms. Daniels. The photo of the defendant had markings on it which are explained by the testimony of Captain Baker, who stated:

"Q. [BY MR. WEBB] What is this number here?

"A. This number here?

"Q. Yes.

"A. Number 6.

"Q. What does that denote, if anything?

"A. This picture had been used prior to this time in a line-up, and that is the number placed on it at that time.

"Q. Is that the picture that was shown to and identified by Miss Daniels?

"A. It is.

"Q. Without question, with respect to that picture, in that picture only, what did she do apart from identification as to that picture?

"A. She placed her initials and date on a piece of tape that was on this picture.

"Q. Is that tape on there now?

"A. No, sir.

"Q. Was it on there as of the Preliminary Hearing?

"A. Yes.

"Q. Who is that a picture of?

"A. Cleo Hill, Jr."

■ The defendant claims that the police markings on photographs shown to eyewitnesses inherently suggested the photograph which the police desired the witnesses to select. *Riley v. State,* 74 Okl.Cr. 363, 126 P.2d 284 (1942), is cited as authority for this proposition. We think the *Riley* case is clearly distinguishable from this case. In *Riley* the prosecutor attempted to ask the eyewitness who was then testifying whether she had selected the defendant's photograph while she was at the Sheriff's Office. This Court held that such questioning was improper because a description of the setting where the identification took place, i.e., the Sheriff's Office, might cause the jury to believe the defendant had prior involvement with law enforcement authorities. Thus the *Riley* case concerned an attempt to tarnish the defendant's reputation in front of the jury. No comparable situation exists here. Ms. Daniels testified that the photographs were shown to her at the donut shop, and that no attempt was made at the time to emphasize the setting where the identification occurred. In addition, the markings on the photograph of the defendant consist merely of abbreviations for the words "State's Exhibit" and several numerals, one of which is faded. The uncontradicted testimony of Captain Baker is that the markings on the picture in question had been taped over until the time of the preliminary hearing. Under these circumstances, we find nothing prejudicial about the picture of the defendant, and therefore hold this assignment to be without merit.

■ The defendant's fourth assignment of error is that the trial court erred in allowing the judgment and sentence of the defendant's prior felony conviction into evidence. The argument is made that a former conviction cannot be used as the basis for enhanced punishment unless it can be shown that the prior conviction was appealed or that the defendant knowingly waived his right to appeal. Further, it is not permissible to presume waiver from a silent record. These are correct statements of law.[1] However, in the case at bar we observe that the defendant was advised of his right to appeal the former conviction, a 1969 conviction for second degree burglary, but waived his right to do so. At page 30 of the original record of Case No. CRF–69–60, Okmulgee County District Court, there appears the following:

"October 30, 1969

"State of Oklahoma appeared by Assistant District Attorney, Kenneth Butler. Defendant appeared in person and with his attorney, James S. Steph. Defendant appeared for the purpose of being sentenced. Court sentenced defendant to the Department of Correction for a period of ten years on the Verdict of the Jury. Defendant advised of his right to appeal from said judgment and sentence and defendant advised of all constitutional rights, defendant stated that he did not wish to appeal, but that he wanted to remain in the County Jail for 10 days and then be transported to the State Penitentiary. All as per Judgment and Sentence."

In *Whitworth v. State,* Okl.Cr., 450 P.2d 851 (1969), this Court held that a defendant's right to appeal may be waived if the defendant is aware of his rights and then does not perfect his appeal within the proper time. It is therefore apparent that the defendant's prior conviction could be used to enhance punishment in this case because the defendant affirmatively waived his right to appeal in the prior case. Defendant's fourth assignment is without merit.

---

1. See, *Linebarger v. State,* Okl.Cr., 527 P.2d 178 (1974).

■ For his fifth assignment of error the defendant contends that the verdict is not supported by the evidence. We cannot agree. It has been the general rule in this jurisdiction for many years that if there is competent evidence in the record from which the trier of fact could conclude that the defendant was guilty, the verdict will not be reversed by the Court of Criminal Appeals on the assertion of insufficiency. *Williams v. State*, Okl.Cr., 549 P.2d 372 (1976); *Bradley v. State*, Okl.Cr., 501 P.2d 528 (1972); *Bryant v. State*, Okl.Cr., 434 P.2d 498 (1967); and, *Laslovich v. State*, Okl.Cr., 377 P.2d 977 (1962).

The only link between the defendant and the crime charged was the eyewitness testimony of Sharon Daniels. Ms. Daniels had several minutes in which to view the defendant, choosing his photograph shortly thereafter and positively identifying him at the trial. Her testimony was entirely uncontradicted. In light of these facts we believe there was more than enough competent sufficient evidence from which the jury could have concluded beyond a reasonable doubt that the defendant was the robber. Therefore, defendant's fifth assignment of error is without merit.

■ In his sixth assignment of error the defendant alleges that he was denied the effective representation of counsel at his trial. The standard for measuring the adequacy of counsel in Oklahoma was recently stated in *Eide v. State*, Okl.Cr., 551 P.2d 275 (1976), where we stated:

"We have repeatedly held that relief upon the ground of ineffective counsel will be granted only when the trial is a farce, mockery of justice, or is shocking to the conscience of the reviewing court, or the purported representation was only perfunctory, in bad faith, a sham, a pretense, or without adequate opportunity for conference and preparation. The burden is clearly upon the defendant to establish inadequate representation, and this burden is not sustained by simply pointing out possible errors in counsel's judgment or lack of success in defense. Neither hindsight nor success is the proper measure for determining the adequacy of legal representation. . . ." (Citations omitted)

The defendant contends that by failing to call certain potential alibi witnesses to testify in the defendant's behalf, the trial counsel failed in his duty to give the defendant effective representation. At the conclusion of the State's case in chief, trial counsel for the defendant read the following statement into the record:

"MR. BARKSDALE: Now then, we have one more record to make as to our witnesses, but we can do that later, or we can do it now. I would like for Mr. Hill to be here.

"THE COURT: He's here.

"MR. BARKSDALE: I believe we discussed this earlier as to subpoenas.

"THE COURT: Go ahead.

"MR. BARKSDALE: Comes now the defendant, Cleo Hill, through his attorney, and hereby states in open Court that contrary to the wishes of this defendant, no witnesses have been subpoenaed on his behalf at this time. *That investigation was made and counsel, solely and wholly, by his own terms, determined not to use any witnesses that he knew about in connection with the defense of this case,* that the one witness, Mr. Otis Brown, which might—who might have been used, was not subpoenaed for the reason that this attorney was unable to determine his whereabouts and from his best information and belief was not in this area and was unable to be served by subpoena. That this defendant desired the witnesses to be subpoenaed but that this counsel did not feel that it would be in his best interest or to serve any useful part of the defense in this case for these witnesses to be subpoenaed in or used at the trial.

"THE COURT: Does that conclude your statement?

"MR. BARKSDALE: To which the defendant has objected. Yes, Your Honor." (Emphasis added)

■ From the above statement we can see that the trial counsel was aware of the existence of the potential alibi witnesses,

considered the effect of their testimony, and then did not call them because in his professional opinion they would not be helpful to his case. Thus, this is not a situation where counsel did not call witnesses because of forgetfulness or mistake. We also note that the trial counsel vigorously cross-examined the State's witnesses, especially Ms. Daniels, made objections whenever appropriate and conducted proper cross-examination at the preliminary hearing. Furthermore, there is no evidence of any bad faith on the part of defense counsel toward his client. We therefore are of the opinion that the defendant has failed to show any conduct on the part of his trial counsel which made the trial a mockery of justice or which would be shocking to this Court. The defendant's sixth assignment of error is meritless.

■ The last assignment of error is that the trial court should have granted the defendant's motion for a new trial based on newly discovered evidence. Affidavits were filed by the defendant's appellate counsel in support of the motion for a new trial. One affidavit was from Mr. Bill Barksdale who was the defendant's trial counsel. Mr. Barksdale in his affidavit stated that the defendant advised him that on the day of the crime the defendant was playing cards with several friends who are named in the affidavit. Also, the defendant advised Mr. Barksdale that another inmate of the County jail confessed to the crime while the defendant was incarcerated prior to trial. Mr. Barksdale states that after investigating the case he felt it would be better not to call these people as witnesses. Several affidavits were also submitted to the trial court from people who claimed to have been with the defendant, playing cards at the time of the robbery. Thus, it is apparent that Mr. Barksdale was aware of the possible alibi defense available to the defendant, but chose not to use it. This evidence is therefore not new since it could have been presented at the trial. Therefore, the trial judge did not err in denying the motion because as we have previously held in many cases, newly discovered evidence has to be such that it could not rea-

sonably have been discovered before a trial. *Vickers v. State,* Okl.Cr., 538 P.2d 1134 (1975). We find no merit to the defendant's last assignment of error.

Since there are no reversible errors in this case, the judgment and sentence is, hereby, *AFFIRMED.*

BUSSEY, P. J., concurs.