**Melvin Tyrone PERRY, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–87–312.**

Court of Criminal Appeals of Oklahoma.

Nov. 2, 1988.

**894**

Redmond P. Kemether, Robert E. Walker, Oklahoma City, for appellant.

Robert H. Henry, Atty. Gen., Susan Stewart Dickerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, JUDGE:

The appellant, Melvin Tyrone Perry, was tried by jury and convicted of First Degree Murder (21 O.S.1981, § 701.7(B)), Robbery with a Dangerous Weapon (21 O.S.Supp. 1982, § 801), Kidnapping (21 O.S.1981, § 741), Second Degree Burglary (21 O.S. 1981, § 1435), and Unauthorized Use of a Motor Vehicle (47 O.S.1981, § 4–102), all After Former Conviction of Two or More Felonies (21 O.S.1981, § 51) in the District Court of Oklahoma County, Case No. CRF–86–2036, before the Honorable Leamon Freeman, District Judge. The jury set punishment at life imprisonment, ninety-nine (99) years, nine hundred ninety-nine (999) years, ninety-nine (99) years and ninety-nine (99) years imprisonment, respectively. Judgment and sentence was imposed accordingly, the sentences to run consecutively. We affirm in part and reverse in part.

The victim, Robert McClish, was to meet Charlotte Brown on the evening of February 16, 1986, at appellant's house in Oklahoma City. Appellant had arranged the meeting so that McClish could be drugged and robbed. McClish arrived and entered appellant's house with Brown, whereupon appellant and his brother, Marvin Perry, came in with guns and told McClish that they were going to kill him. Brown left the room and when she returned, McClish was face down on the floor, with his hands handcuffed behind him. Appellant grabbed McClish by the hair and shot him in the back of the head. Appellant then ordered Brown to clean up the blood. As she wiped up the blood, appellant removed over one hundred dollars ($100.00) from McClish's wallet. Appellant undressed McClish, leaving him dressed in only his underwear and socks, placed his body in a plastic bag and a sleeping bag and then he and his brother loaded the body into appellant's truck. Brown and appellant drove to the bridge over the Cimarron River and

dumped his body into the river. They dumped his clothes about one mile from the bridge.

Brown and appellant then went to McClish's house, where they searched his house and car, taking several items including marijuana, cash, guns, ammunition, cameras and a stereo. They took McClish's car and a few days later, stripped it and left it near McLoud, Oklahoma. On February 21, a wrecker was called to tow the car, and appellant's driver's license was found at the site.

McClish's body was found on March 30, 1986, clad only in underwear and socks. The body was identified through dental records. A plastic bag, a sleeping bag, clothes and towels were recovered about a mile from the bridge. After obtaining a search warrant, police recovered from appellant's house cameras later identified as similar to those taken from McClish's house, a set of handcuffs and some ammunition.

At trial, appellant's case consisted of testimony by Alfred Golden and his brother, who was a co-defendant. Golden testified that Brown was lying, and Marvin Perry testified that he shot McClish in self-defense.

As his first assignment of error, appellant claims the trial court erred in overruling his motion for discovery insofar as the requested information was potentially exculpatory. Although appellant indicates the trial court overruled his discovery motion in part, the record does not support this allegation. Before trial, the parties discussed the discovery motion in the presence of the judge. Both parties agreed that the prosecutor had released to appellant all evidence in his file. Defense counsel agreed that the prosecutor had complied with the discovery request. Based on the record before this Court, appellant's assignment is without merit.

· As his second assignment of error, appellant claims that he was denied a fair trial because the "prosecution failed to reveal the true nature of an agreement regarding lenient treatment" of a witness. At trial, witness Charlotte Brown testified that in exchange for her testimony, she and the district attorney had agreed that she would plead guilty to a robbery charge and be sentenced to a ten (10) year sentence, with five (5) years suspended. The plea proceedings occurred after appellant's trial, and instead of receiving five (5) years suspended, she received eight (8) years suspended. Appellant argues this discrepancy was a denial of due process as it was no different from the situation when the plea bargain is not revealed to the jury. *See Hurt v. State*, 312 P.2d 169 (Okla.Crim. App.1957).

■ We find no such violation of due process as it is clear that the "true nature of the plea bargain was in fact revealed to the jury." *Diaz v. State*, 728 P.2d 503, 511 (Okla.Crim.App.1986). In *Binsz v. State*, 675 P.2d 448, 450 (Okla.Crim.App.1984), this Court discussed the three-part test for determining whether there has been a denial of due process:

> First, whether a key portion of the State's case was presented with information affecting its credibility intentionally concealed; second, whether the prosecution knew or had reason to know of the concealment and failed to bring it to the attention of the trial court; and, third, whether the trier of fact was prevented from properly trying the case against the defendant as a result of the concealment.

As to the first requisite, the supplemental record confirms that the terms of the plea agreement were not "intentionally concealed." Both the prosecutor and Brown's defense counsel signed affidavits which state that the terms of the agreement were correctly stated at trial, but subsequent to trial, Brown's defense counsel negotiated with the district attorney for a larger suspended sentence. Secondly, because there was no intentional "concealment" of any term of the agreement, appellant has failed to show that the prosecutor knew or had reason to know of any changes that would occur in the agreement subsequent to trial. Lastly, the trier of fact was able to weigh the credibility of Brown's testimony. We addressed a similar situation in *Roberts v. State*, 571 P.2d 129, 137 (Okla.Crim.App.

1977), *cert. denied,* 434 U.S. 957, 98 S.Ct. 485, 54 L.Ed.2d 316 (1977). In *Roberts,* a witness, who was serving two twenty (20) year sentences, testified that the district attorney promised that he would be placed on an honor farm in exchange for his testimony. However, after trial, the witness was resentenced to ten (10) years on both prior convictions. This Court held that sufficient evidence was placed before the jury for them to determine the credibility of the witness. Defense counsel was given the opportunity to argue this point of credibility insofar as the jury knew the witness was to receive some sort of lenient treatment. Similarly, in the present case, the jury was told of the plea agreement of witness Brown, and was able to assess her credibility. Defense counsel had opportunity to argue to the jury regarding Brown's credibility. Accordingly, appellant was not denied due process of law. His assignment is without merit.

In his third proposition, appellant urges he was denied effective assistance of counsel at his preliminary hearing due to a conflict of interest. The record shows that an assistant public defender represented both appellant and his co-defendant at the preliminary hearing, but represented neither at trial. Appellant did not object to his attorney's representation at the preliminary hearing.

■ *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980), sets forth the criteria which must be met to establish a Sixth Amendment violation based on conflict of interest when the defendant does not object at trial:

> We hold that the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance.

Not until appellant shows that his counsel "actively represented conflicting interests" has he established the constitutional predicate for his ineffective assistance claim. *Id.* Furthermore, a trial court "may assume that multiple representation entails no conflict," and need not initiate an inquiry unless the "trial court knows or reasonably should know that a particular conflict exists." *Cuyler,* 446 U.S. at 347, 100 S.Ct. at 1717.

In support of his claim, appellant cites several alleged errors. However, after thorough review, it is evident that appellant has only speculated as to the possibility of conflict rather than demonstrating an actual conflict which caused counsel's performance to be deficient. Many of the alleged errors by counsel were not errors at all, but instead reflect counsel's knowledge and expertise in the area of criminal law. *See Spees v. State,* 735 P.2d 571, 572 (Okla.Crim.App.1987). The remaining instances involved trial strategy, which fell within the "wide range of reasonable professional assistance." *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). Accordingly, this assignment is without merit.

■ Next, appellant asserts there was insufficient evidence presented at preliminary hearing to bind him over for trial. He claims the uncorroborated testimony of an accomplice is insufficient to show probable cause that a crime was committed. We agree that accomplice testimony must be corroborated by other evidence, when such testimony is introduced at trial. However, this rule does not apply to preliminary hearings. *Bennett v. State,* 570 P.2d 345, 348 (Okla.Crim.App.1977). The State's burden of proof at preliminary hearing is much less than at trial as the State need only show that a crime was committed and probable cause to believe that the defendant committed the offense. *Johnson v. State,* 731 P.2d 424, 426 (Okla.Crim.App.1986). This assignment is meritless.

In appellant's propositions V, VII, IX, XI and XII, he argues that error occurred both at preliminary hearing and trial insofar as there was insufficient evidence to convict him of the five charges. In each of these propositions, the asserted error at preliminary hearing revolves around the lack of corroboration for the accomplice testimony. As explained above, corroboration need not be presented at preliminary hearing. *Id.*

We will address the sufficiency of the evidence presented at trial as it relates to each charge.

Initially, we must note that corroboration of an accomplice's testimony at trial is mandated under 22 O.S.1981, § 742, which requires that some other evidence that "tends to connect the defendant with the commission of the offense" be presented. The State concedes that witness Brown was an accomplice. Thus, if Brown's testimony is corroborated in one material fact by independent evidence tending to connect appellant with the commission of the crime, the jury may infer that all of her testimony is truthful. *See Maxwell v. State*, 742 P.2d 1165, 1169 (Okla.Crim.App.1987); *Jemison v. State*, 633 P.2d 753, 755 (Okla.Crim.App. 1981). The corroboration evidence does not need to be complete, independent proof of the crime, but instead, must only connect appellant to the crime. *See Johns v. State*, 742 P.2d 1142, 1146–47 (Okla.Crim.App. 1987). Further, when considering the sufficiency of the evidence, this Court has adopted the standard of "whether, after reviewing the evidence in the light most favorable to the prosecution any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *Spuehler v. State*, 709 P.2d 202, 203 (Okla.Crim.App.1985).

In proposition V, appellant questions the sufficiency of the evidence presented on the kidnapping charge. At trial, Brown testified that she entered the room and found McClish lying face down on the floor, with his hands cuffed behind his back. He was begging for his life. Later, police discovered a pair of handcuffs at appellant's residence. Appellee relies on *Jenkins v. State*, 508 P.2d 660, 662 (Okla. Crim.App.1973) wherein the evidence was sufficient to support a conviction for kidnapping. The evidence was that the victim was forced to remain in a chair and was then tied and placed on a bed. Appellant seeks to distinguish this case on the basis that in *Jenkins*, the victim testified that the confinement was against her will, whereas in this case, McClish was unable to testify as he was dead. Appellant's argument is preposterous. The forceful nature of the incident is evidenced by the fact that appellant and his brother held guns to the head of McClish while McClish repeatedly asked that he not be killed.

In propositions VII and XII, appellant urges the lack of corroboration of Brown's testimony causes the evidence to be insufficient for the crime of Robbery with a Dangerous Weapon. He continues by arguing that if the evidence was insufficient on the underlying crime of robbery, then the felony-murder conviction was also insufficient. A review of the evidence shows this assertion to be without merit. Brown testified that appellant undressed the victim, searched his wallet and took around one hundred dollars ($100.00) from the wallet. Her testimony was corroborated by the fact the body was found clothed only in underwear and socks, with no personal belongings. Appellant urges that the State failed to prove ownership of the money taken. Again, we believe that a reasonable jury could have inferred that money taken from the victim's wallet belonged to the victim. Because the robbery conviction was based on sufficient evidence, appellant's argument as to the insufficiency of the felony-murder conviction must fail.

He also attacks the sufficiency of the evidence with regard to his conviction for Unauthorized Use of a Motor Vehicle. Brown testified that appellant drove McClish's car to a remote area where it was abandoned. He later returned and stripped the vehicle. The finding of appellant's driver's license beside the abandoned vehicle corroborates Brown's story. Although appellant also claims there was no evidence introduced regarding ownership of the vehicle, several witnesses identified the car as belonging to McClish. This allegation is meritless.

In proposition XI, appellant alleges the burglary conviction was not supported by sufficient evidence. Again, we disagree. Brown testified that after killing McClish, appellant, the co-defendant and she went to McClish's house, entered the house, and took various items including

cameras, a stereo, guns and ammunition. Her testimony was amply corroborated by the fact that several of these items were later found by police in appellant's house.

Appellant contends that there was no proof of breaking and entering as required in burglary. Unlawful entry can be proven by circumstantial evidence. *Robson v. State*, 611 P.2d 1135, 1136 (Okla. Crim.App.1980). Further, the opening of a closed door can constitute a breaking. *Jones v. State*, 555 P.2d 83, 85 (Okla.Crim. App.1976). Evidence presented at trial indicated that appellant used McClish's keys to gain entry into the house. McClish's neighbor testified that she had a key to McClish's house. When she decided to check on him, she unlocked the front door, finding the house ransacked. No point of entry was found, leaving the only possible entry through the front door. Apparently, after some investigation, no damage was found on the door and it was determined that the perpetrator gained entry with a key. From such circumstantial evidence, a reasonable jury could have found all the elements of the crime of burglary. *See Spuehler*, 709 P.2d at 223. This assignment is without merit.

In his next assignment of error, appellant claims it was error for the jury to return a verdict after only one hour. He submits that the evidence was confusing and the jury could not have given thoughtful deliberation in one hour. In the similar case of *Jerry v. State*, 496 P.2d 422, 427 (Okla.Crim.App.1972), the jury returned a verdict after less than fifteen minutes of deliberation. This Court upheld the verdict, stating "that evidence of defendant's guilt is overwhelming, and that it was not error for the jury to return a guilty verdict in the relatively short period of deliberation." In the present case, appellant has not alleged any misconduct on the part of the jury, *see Teafatiller v. State*, 739 P.2d 1009, 1012 (Okla.Crim.App.1987); instead, he focuses on the shortness of deliberation. Here, as in *Jerry*, we find the evidence of appellant's guilt to be overwhelming, and cannot agree that the shortness of delibera-

tion was error. Thus, this assignment is meritless.

Appellant next claims that he cannot be convicted of both felony-murder and the underlying felony of robbery as convictions for both violate the Double Jeopardy Clause of the United States Constitution. In the Information, appellant was charged with the murder of McClish during the commission of a robbery.

It is abundantly clear that a defendant cannot be convicted of both felony-murder and the underlying felony. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977); *Munson v. State*, 758 P.2d 324, 332 (Okla.Crim.App. 1988); *Jefferson v. State*, 675 P.2d 443, 447 (Okla.Crim.App.1984). Conviction for both crimes would violate the Double Jeopardy Clause of the United States Constitution:

"[W]here ... a person has been tried and convicted for a crime which has various incidents included in it, he cannot be a second time tried for one of those incidents without being twice put in jeopardy for the same offense." [*In re Nielsen,*] 131 U.S. [176], at 188, 9 S.Ct. [672], at 676, [33 L.Ed. 118 (1889)].

Although in this formulation the conviction of the greater precedes the conviction of the lesser, the opinion makes it clear that the sequence is immaterial. Thus the Court treated the formulation as just one application of the rule that two offenses are the same unless each requires proof that the other does not. (Citation omitted)

*Brown v. Ohio*, 432 U.S. at 165, 97 S.Ct. at 2225. Accordingly, appellant's conviction for Robbery with a Dangerous Weapon must be reversed with instructions to dismiss.

Next, appellant urges that the sentence imposed for kidnapping was excessive. As this Court has repeatedly held, the question of excessiveness of punishment for a particular crime is to be determined by the facts and circumstances of each case. *Shultz v. State*, 715 P.2d 485, 488 (Okla. Crim.App.1986); *Edwards v. State*, 663 P.2d 1233, 1235 (Okla.Crim.App.1983). Unless the sentence is so excessive as to

shock the conscience of this Court, we will not modify. *Id.*

■■ In the present case, appellant, with the help of his brother, threatened McClish by pointing a gun at his head, handcuffed him and callously disregarded the victim's pleas that he not be killed. Although appellant relies on the large discrepancy between his sentence for kidnapping and that of his co-defendant, we note that appellant had a more extensive prior record, having been convicted of five prior felonies. In addition, the record indicates that appellant was the "mastermind" of the scheme as well as taking the lead in carrying out the scheme. After a thorough review, we cannot say that appellant's sentence of nine hundred ninety-nine (999) years shocks the conscience of this Court, as it is effectively a life sentence. *See Casady v. State,* 721 P.2d 1342, 1346 (Okla.Crim.App.1986) (500–year sentence for rape); *Camp v. State,* 664 P.2d 1052, 1054 (Okla.Crim.App.1983) (700–year sentences for second degree burglary and pointing a firearm); *Futerll v. State,* 501 P.2d 901, 904 (Okla.Crim.App. 1972) (300–year sentence for kidnapping); *Callins v. State,* 500 P.2d 1333, 1335 (Okla. Crim.App.1972) (1500–year sentence for rape).

Appellant, relying on 22 O.S.1981, § 860, also urges that he suffered prejudice because the jury set punishment for his co-defendant during the first stage of trial. Because his co-defendant was not charged with prior felony convictions, the trial court submitted punishment instructions for the co-defendant following the first stage of trial. The trial court was meticulous in the giving of these instructions, reiterating the fact that they only applied to Marvin Perry, the co-defendant. Appellant's punishment was set during the second stage of trial.

■■ Under Section 860, a bifurcated proceeding is mandated if a defendant had been charged as a repeat offender. Appellant was afforded a bifurcated trial in which the jury determined guilt or innocence in the first stage and set punishment during the second stage. Although appellant claims prejudice, he fails to recognize that the procedures mandated in Section 860 were scrupulously followed. *See Poteat v. State,* 672 P.2d 45 (Okla.Crim.App. 1983). If appellant was concerned about such a procedure, he could have waived his right to a bifurcated proceeding or made motion that his case be tried separately from his co-defendant. He did neither. *See, e.g., Lenion v. State,* 763 P.2d 381 (Okla.Crim.App.1988); *Daniels v. State,* 554 P.2d 88, 96 (Okla.Crim.App.1976). This assignment is without merit.

In his next proposition, appellant asserts that the trial court committed reversible error by refusing to give an instruction with regard to appellant concerning the defense of self-defense. Appellant does not contend that he presented evidence warranting such an instruction; rather, he argues that he is entitled to the instruction because self-defense was the theory presented by his co-defendant.

■■ We find *Diaz v. State,* 728 P.2d 503, 510–11 (Okla.Crim.App.1986) to be determinative of this issue. In *Diaz,* this Court stated that "appellant has failed to properly preserve this issue, however, as the record fails to indicate that defense counsel properly submitted a written request for an instruction on self-defense." Similarly, in the case at bar, defense counsel orally requested that a self-defense instruction be given but did not reduce the same to writing. Furthermore, in *Diaz,* this Court recognized that "appellant failed to present any evidence that he reasonably believed the force he employed was necessary to protect himself from imminent danger of bodily harm." *Id.* Again, in the present case, appellant presented no evidence which would warrant a self-defense instruction. This assignment of error is meritless.

As his last assignment of error, appellant complains that he was improperly restricted in his cross-examination of witness Brown. Appellant raised this objection at trial. Relying on *Alford v. United States,* 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931), appellant cites to several instances in which his cross-examination was limited. In *Alford,* 282 U.S. at 691, 51 S.Ct. at 219, the United States Supreme Court explained

that cross-examination is a "matter of right." However, it was also explained that "the extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court." *Id.* at 694, 51 S.Ct. at 220.

The first instance to which the appellant objects was the limitation of cross-examination regarding the prior criminal transactions between the victim and Brown. The trial court determined these transactions were not relevant to the issues in the case at bar. We agree. The existance or non-existance of these alleged drug transactions did not have "any tendency to make the existence of any fact ... of consequence ... more probable or less probable ..." *See* 12 O.S.1981, § 2401. We cannot say that the trial court abused its discretion in limiting cross-examination in this area.

The second instance involved defense counsel's questioning of Brown regarding the reason no charges were pending against Alfred Golden. The answer to the question was not within the knowledge of the witness as it concerned "strictly legal matter." *See Sherrick v. State,* 725 P.2d 1278, 1281–82 (Okla.Crim.App.1986), *cert. denied,* 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 986 (1987).

Appellant also alleges he was denied opportunity to cross-examine Brown regarding her motives for testifying. We find no basis for this assertion. Although at one point the prosecution made an objection which was sustained by the trial court, the objection was directed at the form of the question. Defense counsel was not precluded from rephrasing the question. We also note that appellant conducted a lengthy examination of Brown, and on several occasions pointed out her possible motives in testifying. *See United States v. Atwell,* 766 F.2d 416, 419 (10th Cir.1985), *cert. denied,* 474 U.S. 921, 106 S.Ct. 251, 88 L.Ed.2d 259 (1985).

Lastly, appellant disagrees with the trial court's limitation of cross-examination with regard to Brown's contact with the OSBI. The records shows that the question asked

by defense counsel had previously been asked and answered. The trial court did not abuse its discretion in refusing to allow the witness to answer a second time. *See United States v. Wood,* 695 F.2d 459 (10th Cir.1982). Appellant's last assignment of error must fail.

For the aforementioned reasons, appellant's conviction for Robbery with a Dangerous Weapon is REVERSED, and the remaining convictions are AFFIRMED.

BRETT, P.J., concurs.

BUSSEY, J., concurs in result.