Brian SPEARS, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–91–376.

Court of Criminal Appeals of Oklahoma.

July 14, 1995.

Edward T. Tillery, Pauls Valley, for appellant at trial.

Charles Douglas, Pauls Valley, for appellee at trial.

D. Hays Foster, Oklahoma City, for appellant on appeal.

Susan Brimer Loving, Atty. Gen., A. Diane Blalock, Asst. Atty. Gen., Oklahoma City, for appellee on appeal.

## OPINION

STRUBHAR, Judge:

Brian Spears, Appellant, was tried by jury in the District Court of Garvin County, Case No. CRF–90–191, before the Honorable J. Kenneth Love, District Judge.[1] Spears was convicted of Murder in the first degree (21 O.S.Supp.1989, § 701.7). The jury found two (2) aggravating circumstances[2] and recommended death. The trial court sentenced

---

1. Spears was tried jointly with Dudley Allen Powell who perfected his appeal separately under Court of Criminal Appeals Case No. F–91–431.

2. [1] the murder was especially heinous, atrocious, or cruel; and [2] the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution. See 21 O.S.1981, §§ 701.12(4) and (5).

Spears accordingly. From this Judgment and Sentence, he appeals. We affirm.

## FACTS

On the evening of September 21, 1990, Jimmy Dewayne Thompson, Vickie Hensley and Spears met to go "ride around" Pauls Valley. They were soon joined by Dudley Powell, Clairborne Johnson, III and Mickey Daniels. The group cruised through Pauls Valley stopping at several places to buy alcohol and beer. Later in the evening the group decided to go to the Klondike Cemetery, a known hangout for drinking.

Hensley and Johnson [3] testified that on the way out to the cemetery Powell and Spears discussed beating Thompson and taking his truck. Powell had told Hensley and Daniels earlier in the evening that he "want[ed] to just kick [Thompson's] butt." At the cattle guard that blocked the entrance to the cemetery, Powell told Johnson and Daniels that when he was half way down the road leading into the cemetery, he was going to "jump" Thompson. Powell told Daniels, Spears and Johnson to join in the beating.

As they walked down the road, Hensley heard Powell say, "who is going to hit him first?" When she looked up Thompson was on the ground. Powell struck Thompson in the head with his fist. Johnson joined in and kicked Thompson while Powell jumped up and down on Thompson's body. Spears joined in and beat and kicked Thompson with the others. Hensley and Daniels retreated to the truck. Johnson testified he, Powell and Spears hit, kicked and jumped on Thompson. Johnson said they did not intend to kill Thompson at first, but at some point decided to kill him. After the beating Spears grabbed Johnson and Powell by the arms, produced a knife and said, "we [have] to kill him." They went back to Thompson's body and each stabbed him several times. Johnson testified they killed Thompson because he could testify against them.

Hensley and Daniels said Powell returned to the truck momentarily and told them Johnson had stabbed Thompson in the throat

and that Johnson would take Thompson's truck to Tulsa and sell it. When Powell, Spears and Johnson returned to the truck they had blood on their shoes and hands. Spears told the group to "shut up and listen to what [Johnson had] to say." Spears wanted Johnson to take Thompson's truck to Tulsa and sell it. Spears told Hensley, "you just got to remember what I told you. If anyone asks you anything to just tell them what I said." Spears told Hensley to say that Thompson took them to the football game and that he [Spears], Hensley and Daniels went to Oklahoma City after the game. Spears emphasized, "you better tell [the police the story] because if you don't, we'll all get in trouble for all this." Daniels asked Powell, Spears and Johnson if they killed Thompson, but no one responded. He said Powell and Johnson continued to talk about selling the truck in Tulsa. Daniels said Powell told him later in jail that Johnson had a knife and they had stabbed Thompson.

The morning after the murder Spears told Daniels, "man, you don't want to know [what we did to Thompson]. The least you know, the better off you are." Spears told Daniels and Hensley they needed an alibi. Spears reiterated they must tell police they went to the football game and afterwards to Oklahoma City.

In a statement to police Powell said he struck Thompson and stomped him along with the others. After the beating, he said they decided to steal Thompson's truck and to kill him. They went back to the body and Johnson produced a knife and stabbed Thompson. Neither Spears nor Powell testified or put on evidence in first stage.

## ISSUES RELATING TO
## JURY SELECTION

In his fifteenth proposition of error, Spears claims the trial court abused its discretion when it refused to excuse prospective juror Bryant for cause. Spears argues prospective juror Bryant infected and biased the entire venire with his comments about newspaper accounts he had read. Spears further claims

---

**3.** Johnson entered a plea of guilty to First Degree Murder receiving a sentence of life without pa-role. As part of his plea he agreed to testify against Powell and Spears.

he was prejudiced by the trial court's decision because he was forced to remove Bryant with a peremptory challenge, thereby reducing his number of peremptory challenges to his detriment.

 The decision whether to disqualify a prospective juror for cause rests in the trial court's sound discretion. *Allen v. State,* 862 P.2d 487, 491 (Okl.Cr.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1657, 128 L.Ed.2d 375 (1994); *Workman v. State,* 824 P.2d 378, 380 (Okl.Cr.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 258, 121 L.Ed.2d 189 (1992). The trial court's decision will not be overturned unless an abuse of discretion is shown. *Allen,* 862 P.2d at 491; *Simpson v. State,* 827 P.2d 171, 175 (Okl.Cr.1992). We note all doubts regarding jury impartiality in a criminal case must be resolved in favor of the accused. *Simpson,* 827 P.2d at 175. Moreover, this Court has routinely held that a juror who cannot impartially decide guilt violates his oath and is the proper subject of a challenge for cause. *Id.; Dutton v. State,* 674 P.2d 1134, 1138 (Okl.Cr.1984).

 During voir dire prospective juror Bryant stated that he had read all that he could about the case because he worked and went to college with Johnson's father. Bryant also followed Johnson's high school basketball career. When asked if he could be impartial, Bryant replied, "I would do my best." After the prosecutor advised Johnson would be a witness for the prosecution and relay the events of the murder, he asked Bryant if he could be impartial. Bryant again replied, "I would do my best." Bryant said he would "try" to set aside what he had read in the newspaper and listen to the evidence submitted in court. The prosecutor then asked if Bryant would follow the law and the court's instructions. Bryant replied affirmatively.

When questioned by Spears' counsel, Bryant advised that he had not seen Johnson's father in several years and that he had not formed an opinion as to the guilt or innocence of Powell or Spears. When Spears' counsel asked if he would tend to give more credibility to the testimony of Johnson, Bryant replied, "I would do my best to keep an open mind." Spears' counsel

repeated the question and Bryant responded, "[w]ell, I would try to keep an open mind. I have known his father for 19 years. And I would do my very best to keep an open mind." Both Spears' and Powell's attorneys challenged Bryant for cause. Before ruling, the trial court allowed the prosecutor to rehabilitate Bryant. After receiving two equivocal answers, the prosecutor asked Bryant for a commitment to set aside his prior dealings with Johnson's father and the accounts he had read in the newspaper and consider only the evidence introduced at trial. Bryant stated he would do so. The trial court overruled the motions to excuse Bryant for cause.

Powell's counsel renewed the questioning about Bryant's impartiality and his commitment to start from "ground zero." Bryant candidly said from the indications in the newspaper, it appears Spears and Powell are guilty. Bryant noted "the papers are inaccurate and lead you to believe things," but the accounts in the newspaper led to the conclusion they are guilty. When asked again if he could set all he knew aside, Bryant replied, "[w]ell, the first two times I answered that, I said I would try. And the last time I said, yes. And it goes back to where I would do my darnest (sic) to do it. You know somebody for 20 years, you know, it is hard to block everything out of your mind. But I would do my best...." Both Spears' and Powell's lawyers renewed their challenges for cause. The trial court again allowed the prosecutor to rehabilitate Bryant. Bryant unequivocally stated he would follow his oath and put aside all outside influences. The trial court overruled the renewed motions to remove Bryant for cause.

It is the trial court's duty to determine a prospective juror's actual bias, and it has broad discretion in rulings on challenges. *Simpson,* 827 P.2d at 175; *Dennis v. United States,* 339 U.S. 162, 168, 70 S.Ct. 519, 521, 94 L.Ed. 734, 740 (1950). The determination of whether a member of the venire will be an impartial juror is influenced by many factors. *Simpson,* 827 P.2d at 175. Situations will arise where the trial judge receives a definite impression of a potential juror which is not reflected in the record. *Id.* In the instant case, despite Bryant's equivocal statements,

the trial court was left with the impression that Bryant would be an impartial juror. Because support is found in the record for the trial court's decision, we find no abuse of discretion is shown. *Id.*

■ Additionally, in order for this Court to reverse a conviction or modify a sentence, Spears must show that he was prejudiced by the court's decision. *Id.* Spears claims he was prejudiced by the court's decision because his attorney was forced to remove Bryant with a peremptory challenge [4], thereby reducing his number of peremptory challenges to his detriment. There is no evidence in the record that Spears was forced to remove Bryant or to keep an unacceptable juror after he had exercised all of his peremptory challenges.[5] *Id.; Tibbs v. State,* 819 P.2d 1372, 1379 (Okl.Cr.1991); *Brown v. State,* 743 P.2d 133, 139 (Okl.Cr.1987); *Hawkins v. State,* 717 P.2d 1156, 1158 (Okl.Cr. 1986). Therefore, Spears has failed to make a sufficient showing to warrant relief. Accordingly, this proposition of error is denied.

## ISSUES RELATING TO GUILT/INNOCENCE

■ In his first proposition of error, Spears contends his conviction cannot be sustained using a malice murder theory.[6] Spears argues he cannot be convicted as a principal because the State did not prove he delivered the fatal blow which resulted in Thompson's death or that he aided and abetted in the murder.

■ This Court reviews the sufficiency of the evidence reviewing both the direct and circumstantial evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *Barnett v. State,* 853 P.2d 226, 231 (Okl.Cr.1993). In order for Spears to be convicted as a principal in

Thompson's murder, the State had to establish either that he directly committed each element of first degree malice murder or that he aided and abetted another in its commission. 21 O.S.1991, § 172. Aiding and abetting in a crime requires the State to show that the accused procured the crime to be done, or aided, assisted, abetted, advised or encouraged the commission of the crime. *Barnett,* 853 P.2d at 231. *See also Hindman v. State,* 647 P.2d 456, 458 (Okl.Cr.1982). While we have held mere presence or acquiescence, without participation, does not constitute a crime, only slight participation is needed to change a person's status from mere spectator into an aider and abettor. *Barnett,* 853 P.2d at 231; *McBrain v. State,* 763 P.2d 121, 124–25 (Okl.Cr.1988).

■ In the present case, the medical examiner testified in his opinion, based upon medical fact, the cause of Thompson's death was blunt force head injuries. He stated that one blow could have caused Thompson's head injuries and resulting death. It was uncontroverted that Powell hit Thompson first, then Johnson joined in and finally Spears.

Spears argues this evidence necessarily excludes the jury from finding that his blows contributed to Thompson's death. He contends that such a finding would be based upon mere speculation as there was no evidence that Thompson was alive when he entered the fray. Taking Spears' argument to its logical conclusion, neither Spears, Powell nor Johnson could be convicted of first degree malice murder because the medical examiner could not discern which blow caused Thompson's death. Such an argument is untenable.

The testimony of the medical examiner was not the only evidence the jury had before it to determine whether or not Thompson was alive when Spears entered the at-

---

4. Although Spears claims his attorney removed Bryant with a peremptory challenge, the record shows Powell's attorney removed Bryant with a peremptory challenge.

5. Defense counsel did not state that he desired to remove any other jurors through the use of peremptory challenges.

6. Sufficiency issues often arise when defendants are charged alternatively with malice and felony murder and separate verdict forms are not used. This Court affirmatively endorses and strongly urges trial courts to use separate verdict forms for each theory of murder to remedy this problem in future cases.

tack. Spears believed Thompson was still alive when he grabbed Johnson and Powell by the arm after the beating and said they had to kill Thompson because he could testify against them. Testimony revealed Powell knelt down during the beating and listened to Thompson's chest and heard a gurgling sound. Daniels testified he heard Thompson "hollering" and "moaning" during the beating. Thus, there was sufficient additional evidence from which the jury could have found that Thompson was still alive at the time Spears entered the attack which resulted in Thompson's death.

■ Further, there was evidence Spears knew Powell was going to beat Thompson and was present when Powell told Johnson and Daniels to join in after he landed the initial blow. According to Hensley, Daniels and Johnson, Spears willingly joined in the attack on Thompson and beat, stomped and kicked him with Johnson and Powell. Spears' actions belie his assertion that he did not aid and abet in the murder of Thompson. As we said in *Dumire v. State*, 758 P.2d 829, 830–31 (Okl.Cr.1988), "[i]t is irrelevant that the defendant may not have actually struck the fatal blow. His voluntary participation and cooperation in the attack established [his] guilt as an equally culpable principal." We find the above evidence is sufficient to support the jury's finding, beyond a reasonable doubt, that Spears aided and abetted Powell in the commission of First Degree Murder. Accordingly, this proposition of error is denied.

Spears argues in his second proposition of error the evidence was insufficient to sustain his First Degree Murder conviction using a felony murder theory. Spears specifically argues felony murder must fail because he did not participate in the taking of Thompson's truck. He further argues the State failed to prove Thompson was killed during the commission of a robbery with a dangerous weapon.

■ In the instant case a rational jury viewing the evidence in the light most favorable to the State could find the State proved beyond a reasonable doubt that Spears participated in taking Thompson's pickup. *Spuehler v. State*, 709 P.2d 202, 203–04 (Okl. Cr.1985). During the evening of September 21, 1990, Spears proposed the group drive out to the Klondike Cemetery. Hensley and Johnson testified as they drove out to the cemetery Powell and Spears discussed beating Thompson and taking his pickup [7]. When they arrived at the cemetery, Powell told Spears, Johnson and Daniels he would strike Thompson as they walked towards the cemetery and advised the others to join in. The group started towards the cemetery and Powell struck Thompson in the head. Johnson and then Spears joined Powell in kicking, stomping and beating Thompson. When Powell, Spears and Johnson returned to the pickup, they took the pickup and Thompson's wallet. Spears directed Johnson to take the truck to Tulsa and sell it. While Spears may not have driven Thompson's pickup from the cemetery or taken it to Tulsa, we find directing its disposition certainly constitutes aiding and abetting. *Barnett*, 853 P.2d at 231. Because this Court accepts all reasonable inferences and credibility choices that tend to support the verdict, *Carter v. State*, 879 P.2d 1234, 1248 (Okl.Cr.1994), the above evidence sufficiently proves Spears wrongfully took Thompson's pickup from him by force using his hands and feet as dangerous weapons [8].

■ Spears further argues the State failed to prove Thompson was killed during the commission of a robbery with a dangerous weapon.[9] Spears contends the robbery

7. Johnson testified Spears and Powell said, "hey, we are going to go ahead and jump on this dude, and we're going to take his pickup. So that way we are going to have wheels. We have got to beat him up." (Tr. at 1148)

8. *See Pettigrew v. State*, 430 P.2d 808, 813 (Okl. Cr.1967) (holding the manner in which fists and hands are used determines whether they are dangerous weapons); *Smith v. State*, 79 Okl.Cr. 151, 152 P.2d 279, 281 (1944) (holding the manner in

which shoes are used determines whether they are dangerous weapons).

9. The elements of First Degree Felony Murder with the underlying felony of Robbery with a Dangerous Weapon are: First, the death of a human; Second, the death occurred as a result of an act or event which happened in the commission of robbery with a dangerous weapon; Third, caused by the defendant(s) while in the commission of robbery with a dangerous weap-

occurred after the fatal blows had been administered and therefore not during its commission. Essentially, Spears argues Thompson was dead prior to the robbery and that it is impossible to rob a dead man.

In *Diaz v. State*, 728 P.2d 503, 508 (Okl.Cr. 1986), we held the fact that a person robbed by force or fear is rendered unconscious prior to the actual taking of property does not reduce the crime to larceny from the person. Further, it is not necessary that a robbery victim see or hear the taking of his property. *Id.* at 509. The *Diaz* court held the killing may precede, coincide with or follow the robbery and still be done in the commission of robbery with a dangerous weapon. *Id.*

■ As stated above, Hensley and Johnson testified they heard Spears and Powell talking about beating Thompson and taking his pickup. Spears and Powell then carried out their plan by beating and later stabbing Thompson and taking his truck. Spears directed Johnson to take Thompson's pickup to Tulsa and sell it. This evidence sufficiently established a plan to rob and beat Thompson which was then carried out. Clearly, Thompson was killed during the course of the robbery. *Diaz*, 728 P.2d at 509. Accordingly, we find this proposition is without merit.

In his third proposition of error, Spears argues his conviction is based on the uncorroborated testimony of his accomplices Johnson, Daniels and Hensley in violation of 22 O.S.1991, § 742. In *Perry v. State*, 764 P.2d 892, 897 (Okl.Cr.1988), we reiterated that corroboration of an accomplice's testimony at trial is mandated under 22 O.S.1991, § 742. Section 742 requires that some other evidence that "tends to connect the defendant with the commission of the offense" be presented. *Id.* The State concedes that witness Johnson was an accomplice, denies witnesses Daniels and Hensley were accomplices, and argues any accomplice testimony was sufficiently corroborated.

■ First, we address whether Daniels and Hensley were accomplices. To determine whether a witness is an accomplice, this Court must determine whether the witness could be indicted for the offense for which the accused is being tried. *Smith v. State*, 819 P.2d 270, 275 (Okl.Cr.1991), *cert. denied*, 504 U.S. 959, 112 S.Ct. 2312, 119 L.Ed.2d 232 (1992). "Whether a witness is an accomplice may be a matter of law for the trial judge, or the evidence may require the question to be submitted to the jury." *Id.*

■ It was uncontroverted that Daniels and Hensley never planned to rob Thompson. When the truck stopped, it was Spears, Powell and Johnson who decided to beat Thompson. It was Powell who landed the first blow and Spears and Johnson who joined in. While Daniels and Hensley stood by and let it happen, there was absolutely no evidence at trial they ever became involved in the beating. Where there is no evidence that a witness participated in, planned, or encouraged the commission of a crime, their mere presence during its commission will not make them an accomplice. *Smith*, 819 P.2d at 275. Because neither Daniels nor Hensley could have been charged with malice or felony murder in conjunction with the Thompson homicide, we find they were not accomplices under the law. *Id.*

■ Assuming arguendo, Hensley and Daniels were accomplices, their testimony, as well as Johnson's, was sufficiently corroborated. The accomplice testimony need only be corroborated in one material fact by independent evidence tending to connect Spears with the Thompson murder before the jury could infer any accomplice testimony was truthful. *Perry*, 764 P.2d at 897; *Maxwell v. State*, 742 P.2d 1165, 1169 (Okl.Cr.1987). Such corroboration evidence need not be complete, independent proof of the crime, but instead, must only connect Spears to Thompson's murder. *Perry*, 764 P.2d at 897; *Johns v. State*, 742 P.2d 1142, 1146–47 (Okl.Cr. 1987).

Jerry and Narita Roady testified they saw Powell and Spears with Thompson on September 21, 1990 and that they appeared intoxicated. Mr. Roady also noticed a two tone

on; Fourth, wrongful; Fifth, taking; Sixth, carrying away; Seventh, personal property; Eighth, of another; Ninth, from the person or immediate

presence of another; Tenth, by force or fear; Eleventh, by use of a loaded/unloaded/imitation firearm, *or* other dangerous weapon.

pickup matching the description of Thompson's pickup outside the store where they saw Powell and Spears. Michael Nelson, who discovered Thompson's body, corroborated the testimony of Johnson, Daniels and Hensley about the location of the attack. Dr. Balding, the medical examiner, testified about the blunt force injuries and stab wounds sustained by Thompson further corroborating Johnson, Hensley and Daniels' testimony concerning the attack. Several beer cans collected at the crime scene matched the brand of beer Johnson, Hensley and Daniels said they were drinking at the cemetery. Given the above corroborating evidence we find Spears' conviction is not based on the uncorroborated testimony of accomplices, but on competent evidence proven beyond a reasonable doubt. Accordingly, we find this proposition is without merit.

Spears argues in his fourth proposition of error the prosecutor diluted the "reasonable doubt" standard during voir dire. Spears cites three comments he claims diluted the "reasonable doubt" standard, told the jury it could substitute its "hunches" for the evidence presented and told the jury it must choose between Spears' guilt or innocence[10]. Because Spears did not object to any of the comments of which he now complains, we will review for plain error. *Mitchell v. State,* 884 P.2d 1186, 1201 (Okl.Cr.1994).

■■■■ Spears correctly states we do not condone comparisons of the civil case standard to the beyond a reasonable doubt standard as such can be construed as an impermissible attempt to define or explain reasonable doubt. *Pannell v. State,* 640 P.2d 568, 570 (Okl.Cr.1982). However, when the comment is read in context the prosecutor was simply inquiring of a prospective juror, who said she had served as a juror on a civil case, whether she understood there was a different

standard of proof in a criminal case. In no way did the prosecutor make a comparison between the two standards in an attempt to explain or define reasonable doubt. We find no error occurred.

Nor are the other two comments erroneous statements of the law. When read in context the prosecutor simply explained to the prospective jurors that they are the judges of the facts and they, alone, determine what the facts are. The prosecutor emphasized the jurors must rely on their memories of the testimony and assess the credibility of witnesses to resolve any conflict in the testimony. Again, we find no error in the comments complained of and find this proposition is without merit.

■■■■ In his fifth proposition of error Spears argues he was denied due process of law and conviction by a unanimous verdict because the jury was not instructed to find unanimously that he had committed first degree murder either with malice aforethought or during the course of an armed robbery[11]. This same argument was recently addressed and rejected by this Court in *Neill v. State,* 896 P.2d 537, 552 (Okl.Cr.1994). *See also James v. State,* 637 P.2d 862, 865 (Okl.Cr. 1981).

■■■■ We note Spears has waived all but plain error review by his failure to object to the instructions and verdict forms submitted to the jury. *Neill,* 896 P.2d at 552. We further note, counsel specifically stated "as [the instructions] are finalized, I have no objections." As in *Neill,* by failing to bring any potential error to the attention of the trial court and allow the trial court to cure any such potential error, Spears has failed to properly preserve this issue for appellate review. *Neill,* 896 P.2d at 552; *Munson v.*

10. "Now, you understand that a civil case, the burden of proof for the Plaintiff is much less than the burden of proof that we, as the State, have in a criminal case? (Tr. at 29)
"And if one said the car is blue, and one said it was yellow, and you believed it was green; it is green, okay." (Tr. at 38)
"Have you experienced that same situation of having to chose (sic) between two different stories a lot of times?" (Tr. at 39)

11. We note the State improperly pled the alternative theories of murder in two separate counts. Such error is not reversible because the instructions to the jury informed the jury that a finding of guilt of first degree murder could be returned only upon a finding that the State had proved, beyond a reasonable doubt, all of the elements of both counts 1 and 2. These instructions effectively placed a higher burden on the State to prove both theories of murder. *Crawford v. State,* 840 P.2d 627, 639 (Okl.Cr.1992).

*State,* 758 P.2d 324, 331–32 (Okl.Cr.1988), *cert. denied,* 488 U.S. 1019, 109 S.Ct. 820, 102 L.Ed.2d 809 (1989).

Even assuming the issue was properly preserved for review, this Court has reaffirmed its prior holdings that failure of a jury to indicate the basis of its finding of guilt was not error where there was a single crime charged, that is first degree murder. *Neill,* 896 P.2d at 552; *Crawford,* 840 P.2d at 640. "Whether or not it was committed with malice aforethought, or during the commission of a felony goes to the factual basis of the crime." *Id.* When the jury verdict was unanimous that the appellant committed murder in the first degree, such a verdict satisfies due process. *Id.* Further there is no due process violation when all of the elements of the crime charged were proven. *Id.*

In the present case, Spears was charged in the alternative with malice aforethought murder and murder during the commission of an armed robbery. Because the State proved both malice and felony-based murder, we find the jury's failure to indicate the basis of its finding of guilt was not error. *Neill,* 896 P.2d at 552. *See also* Propositions I and II, *supra.* Accordingly, this proposition of error is denied.

In his sixth proposition of error, Spears contends the trial court erred in admitting photographic evidence in both the first and second stages of trial over defense counsel's objection. Spears specifically assigns error to the admission of State's Exhibit Nos. 2 and 3 in the first stage of trial. State's Exhibits 2 and 3 are photographs depicting Thompson as he was found by the police on the side of the road near Klondike Cemetery. Spears argues that State's Exhibits 2 and 3 were not relevant in the first stage of trial because there was no dispute concerning Thompson's identity or the cause of death. He further argues he was prejudiced by the repetitive nature of the photographs.

■ This Court has consistently held the test for admissibility of a photograph is not whether it is gruesome or inflammatory, but whether its probative value is substantially outweighed by the danger of unfair prejudice. *Hooks v. State,* 862 P.2d 1273, 1280

(Okl.Cr.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1870, 128 L.Ed.2d 490 (1994); *Clayton v. State,* 840 P.2d 18, 28 (Okl.Cr.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1655, 123 L.Ed.2d 275 (1993). "Whether to introduce photographs of a homicide victim is a decision largely within the trial court's discretion." *Hooks,* 862 P.2d at 1280; *Bennett v. State,* 652 P.2d 1237, 1239 (Okl.Cr.1982).

■ In *Hooks,* this Court rejected a similar argument that photographs were inadmissible because neither the identity of the victim nor the injuries sustained were matters contested at trial. *Hooks,* 862 P.2d at 1281. *See also Williamson v. State,* 812 P.2d 384, 400 (Okl.Cr.1991), *cert. denied,* 503 U.S. 973, 112 S.Ct. 1592, 118 L.Ed.2d 308 (1992). This Court found photographs depicting murder victims can be probative in many respects. *Hooks,* 862 P.2d at 1281. Homicide photographs can show the nature, extent and location of wounds, establish the corpus delicti, depict the crime scene and corroborate a medical examiner's testimony. *Id.; Nguyen v. State,* 769 P.2d 167, 171 (Okl.Cr.1988), *cert. denied,* 492 U.S. 925, 109 S.Ct. 3264, 106 L.Ed.2d 609 (1989). In *Williamson,* 812 P.2d at 400, this Court found pictures of the murder victim are always probative in establishing the corpus delicti of the crime.

■ In the present case, eight (8) photographs of the crime scene and the victim as discovered at the scene were identified. Spears objected to Exhibits 2 and 3 which depicted Thompson arguing they had no probative value and were gruesome. Contrary to Spears' assertions the photographs were probative because they showed the crime scene and the victim as discovered by law enforcement officers. *Id.* Further, Spears was not prejudiced by the repetitive nature of the two photographs. Although this Court has held there is a point in the display of relevant photographs where the photographs are so duplicative that a needless repetition can inflame the jury and result in error, the introduction of two photographs does not reach that point. *Neill,* 896 P.2d at 552. Spears has failed to demonstrate that he was prejudiced in any of his substantial rights by the slight repetition of

the two photographs. Accordingly, we find no abuse of discretion in the admission of State's Exhibits 2 and 3 in the first stage of trial. *Id.*

More troubling are State's Exhibit Nos. 37, 42, 45, 46, 50 and 52 introduced in the second stage of trial to prove that the murder was especially heinous, atrocious or cruel. To prove a murder was especially heinous, atrocious or cruel, the State must introduce competent evidence indicating the victim's death was preceded by torture or serious physical abuse, which may include the infliction of either great physical anguish or extreme mental cruelty. *Perry v. State*, 893 P.2d 521, 533–34 (Okl.Cr.1995); *Booker v. State*, 851 P.2d 544, 548 (Okl.Cr.1993); *Battenfield v. State*, 816 P.2d 555, 565 (Okl. Cr.1991). To support a finding of serious physical abuse, the State must show the victim endured *conscious* physical suffering prior to death. *Stafford v. State*, 832 P.2d 20, 23 (Okl.Cr.1992).

Exhibits 37, 42, 45, 46, 50 and 52 are admittedly gruesome. They depict Thompson from various angles and focus on the numerous post mortem stab wounds Thompson sustained. The photographs show several large gash wounds and Thompson's exposed intestines. In three of the photographs one can also see Thompson's swollen face and black eye.[12]

In *Bryson v. State*, 876 P.2d 240, 258 (Okl. Cr.1994), *cert. denied*, — U.S. —, 115 S.Ct. 752, 130 L.Ed.2d 651 (1995), this Court upheld the introduction of gruesome photographs to prove a murder was especially heinous, atrocious or cruel because they showed the decedent's death was preceded by torture or serious physical abuse. The *Bryson* court also found the pictures somehow corroborated the medical examiner's testimony that the decedent was still alive when he was set on fire. *Id.* As in *Bryson* the photographs in the instant case were relevant and helped to prove Thompson suffered abuse prior to his death. Because there was testimony Thompson moaned and suffered two perimortem stab wounds, the photographs were properly admitted to prove

Thompson's death was preceded by serious physical abuse. *See also Ellis v. State*, 867 P.2d 1289, 1299 (Okl.Cr.1992), *cert. denied*, — U.S. —, 115 S.Ct. 178, 130 L.Ed.2d 113 (1994).

These photographs are not, however, probative of whether Thompson was conscious during the beating which is the critical inquiry in determining whether a murder was especially heinous, atrocious or cruel. The probative value of these photographs is very slight especially in light of their gruesome nature. Their probative value scarcely exceeds their prejudicial effect. We note the introduction of the six photographs came very close to causing a second sentencing hearing given the paucity of evidence supporting the aggravator especially heinous, atrocious or cruel. Because such photographs were not admitted in first stage, they were more shocking seen for the first time in the punishment stage. As this Court said in *Pickens v. State*, 850 P.2d 328, 344 (Okl.Cr. 1993), *cert. denied*, — U.S. —, 114 S.Ct. 942, 127 L.Ed.2d 232 (1994), "[m]ore consideration should be given in formulating a trial strategy that will ensure a conviction, once obtained at trial, will meet the requirements of appellate review. This type of trial preparation will more admirably fulfil the oath of office and serve the citizens of this State, especially the victims of criminal offenses." However, because the probative value of these photographs outweighs their prejudicial effect, we must reject Spears' proposition of error.

In his seventh proposition of error, Spears argues the trial court abused its discretion in denying his motion for severance. He argues severance was required because the State intended to introduce the confession of Powell, his non-testifying co-defendant. Spears argues the failure to sever resulted in prejudicial *Bruton* error. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

This Court has consistently held the decision to grant or deny severance is left to the sound discretion of the trial court. *Neill v. State*, 827 P.2d 884, 886 (Okl.Cr.1992).

12. *See* State's Exh. 42, 46 and 50.

Severance can be appropriate when the State intends to introduce a non-testifying co-defendant's confession at their joint trial. *Neill*, 827 P.2d at 893. However, absent an abuse of discretion resulting in prejudice to the accused, the decision of the trial court will not be disturbed on appeal. *Neill*, 827 P.2d at 886; *Cooks v. State*, 699 P.2d 653, 658 (Okl.Cr.1985), *cert. denied*, 474 U.S. 935, 106 S.Ct. 268, 88 L.Ed.2d 275 (1985); *Menefee v. State*, 640 P.2d 1381, 1383 (Okl.Cr.1982).

Spears claims severance was required because he suffered extreme prejudice by the introduction of Powell's confession. He argues he was prejudiced because Powell made references to "others" which he claims included him in the group that attacked Thompson.

■ This Court has repeatedly held that it is a confrontation clause violation to introduce the statement of one non-testifying co-defendant *which incriminates another co-defendant* at their joint trial. *Plantz v. State*, 876 P.2d 268, 273 (Okl.Cr.1994); *Neill*, 827 P.2d at 893; *See also Cruz v. New York*, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987). In the present case, no error occurred because Powell's confession did not incriminate Spears. Steve Wigley testified he was present during Powell's confession in which Powell said that he and a group of people rode around Pauls Valley and ended up at Klondike Cemetery. Powell told Officer Wigley he struck Thompson and stomped him along with the "others." Powell claimed it was Johnson who produced the knife and stabbed Thompson. We find such an oblique reference to "others" does not incriminate Spears.

■ Even if we found the references to "others" incriminated Spears, the error was harmless. This Court has continually held that when such a confrontation violation exists, the defendant must still demonstrate that the error was prejudicial. *See Keeling v. State*, 810 P.2d 1298, 1302 (Okl.Cr.1991); *Smith v. State*, 765 P.2d 795, 796 (Okl.Cr. 1988); *Parsons v. State*, 740 P.2d 167, 169 (Okl.Cr.1987). When the properly admitted evidence is so overwhelming and the prejudicial effect of the statements is insignificant,

the admission of the confession is harmless. *Smith*, 765 P.2d at 796.

In the present case Hensley, Daniels and Johnson testified Spears was in the group and detailed his participation in the beating of Thompson. Each recounted how Spears was the last to join the attack, but described how he severely kicked and beat Thompson. Johnson testified how Spears stopped him and Powell after the beating and told them they had to kill Thompson. In light of the overwhelming testimony placing Spears in the group, we find Powell's confession did not contribute to the guilty verdict of Spears. Therefore, were there any error in the admission of Powell's confession, it was harmless beyond a reasonable doubt. Accordingly, this proposition is denied.

■ Spears also claims he was prejudiced by Hensley's statement that Powell asked who was going to hit Thompson first and Daniels' statement that Powell told him he, Spears and Johnson stabbed Thompson. While these inculpatory hearsay statements should not have been admitted, the error was harmless. As stated above, Hensley, Daniels and Johnson testified in detail about Spears' participation in the beating death of Thompson. Johnson testified how Spears stopped him and Powell after the beating, produced a knife and said they had to kill Thompson. Johnson then described how Spears repeatedly stabbed Thompson's body. Again, we find the admission of these two statements did not contribute to Spears' guilty verdict rendering any error harmless beyond a reasonable doubt. *Id.* Accordingly, we find this proposition is without merit.

## ISSUES RELATING TO INEFFECTIVE ASSISTANCE OF COUNSEL

In Spears' eighth, ninth, tenth, eleventh, twelfth, thirteenth and fourteenth propositions of error, he contends he was denied effective assistance of counsel as guaranteed by the Sixth Amendment. Spears cites defense counsel's failure to object to certain hearsay statements, failure to object to the admission of Powell's confession, failure to object to various instances of prosecutorial misconduct, failure to object to the flight instruction and failure to request voluntary

intoxication and first degree diminished capacity manslaughter instructions as deficient performance.

█ To successfully prove ineffective assistance of counsel, Spears must satisfy the two-prong test enunciated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). He must show: (1) that defense counsel's performance was deficient, which requires showing that counsel made errors so egregious that he was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) that he was prejudiced by the deficient performance, which requires showing that counsel's errors deprived him of a fair trial with a reliable outcome. *Id.* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Failure to prove either of these elements is fatal to Spears' entire claim.

█ In *Lockhart v. Fretwell,* —— U.S. ——, 113 S.Ct. 838, 843, 122 L.Ed.2d 180 (1993), the Supreme Court stated that the "touchstone of an effective assistance of counsel claim is the fairness of the adversary proceeding". A mere showing that a conviction would have been different but for counsel's errors would not suffice to sustain a Sixth Amendment claim. *Id.* Unreliability or unfairness does not result unless the ineffectiveness of counsel deprives the defendant of a substantial or procedural right to which he is entitled by law. *Id.* at ——, 113 S.Ct. at 844, 122 L.Ed.2d at 191.

First, Spears claims counsel should have objected to Hensley's statement that Powell asked who was going to hit Thompson first and Daniels' statement that Powell told him he, Spears and Johnson stabbed Thompson. As discussed in Proposition VII, *supra,* Spears was not prejudiced by the introduction of Hensley's and Daniels' hearsay testimony. Consequently, he cannot show counsel's failure to object deprived him of a fair trial. We find this contention is without merit.

Second, Spears claims counsel should have objected to the introduction of Powell's confession. Again, Spears cannot meet his burden. As discussed in Proposition VII, *supra,* no error occurred in the introduction of Powell's confession because it was successfully redacted. Therefore, counsel did not err in failing to object to its admission. Again, we find this contention is without merit.

Third, Spears claims counsel should have objected to the prosecutor's attempts to invoke victim sympathy. Spears cites five instances in which he claims the prosecutor improperly invoked victim sympathy and argued victim impact evidence.

█ We have consistently held it is improper for the prosecution to ask jurors to have sympathy for victims. *Pickens,* 850 P.2d at 342. While victim impact evidence may be appropriate in the sentencing phase of trial, it is error to introduce victim impact evidence in the guilt/innocence phase of trial. *Payne v. Tennessee,* 501 U.S. 808, 827, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720, 736 (1991). While the prosecution and the defense have the right to discuss fully from their standpoint the evidence, and the inferences and deductions arising therefrom, the guilt/innocence phase of trial is no place for subtle appeals for victim sympathy. *Pickens,* 850 P.2d at 342; *Carol v. State,* 756 P.2d 614, 617 (Okl.Cr.1988).

█ We have reviewed the remarks cited by Spears in light of the overall evidence to determine whether the prosecutor's remarks were so prejudicial as to warrant reversal or modification. *Pickens,* 850 P.2d at 343; *Thornton v. State,* 668 P.2d 344, 346 (Okl.Cr.1983). Allegations of prosecutorial misconduct will not cause a reversal of judgment or modification of sentence unless their cumulative effect is such as to deprive the defendant of a fair trial and fair sentencing proceeding. *Pickens,* 850 P.2d at 343. *See also Williams v. State,* 658 P.2d 499, 501 (Okl.Cr.1983). Such was not the case here. Although the prosecutor made reckless attempts to invoke victim sympathy, in light of the overwhelming evidence of guilt, the remarks did not contribute to the verdict or affect the fairness of the trial.

Having found that none of the alleged improper prosecutorial questions or comments were so grossly improper as to have affected the verdict or sentence, Spears has failed to show that defense counsel was deficient in failing to make proper objections. *Fisher v.*

*State*, 736 P.2d 1003, 1013 (Okl.Cr.1987), *cert. denied*, 486 U.S. 1061, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1988). As we noted in *Fisher*, "deciding when and if to object to portions of the prosecutor's closing argument is a matter of trial tactics and strategy." *Id.* Because Spears has made no showing of prejudice, his claim is fatally defective.

Fourth, Spears claims counsel should have objected to the flight instruction because there was no evidence he left the cemetery to avoid arrest. Not long ago, this Court in *Mitchell v. State*, 876 P.2d 682, 685 (Okl.Cr. 1993), held giving flight instructions in cases where the defendant does not explain his departure is error. Because Spears did not testify at trial or offer any explanation of his departure, giving the flight instruction under the *Mitchell* rule would appear to be error. *Id.* However, this Court in two recent decisions has made clear that *Mitchell* is prospective in application. *Rivers v. State*, 889 P.2d 288, 292 (Okl.Cr.1994); *Cooper v. State*, 889 P.2d 293, 310 (Okl.Cr.1995). As in *Rivers*, 889 P.2d at 292, *Mitchell* is not applicable in the present case because it was pending when *Mitchell* was decided.

We now review whether the flight instruction in the instant case was properly given under the standard used prior to *Mitchell*. "Specifically, we must determine whether, when viewed in the context of the other evidence, the evidence of [Spears'] alleged flight tend[ed] to establish [his] guilt or innocence." *Rivers*, 889 P.2d at 292. *See also Farrar v. State*, 505 P.2d 1355, 1361 (Okl.Cr.1973).

After Spears, Powell and Johnson beat, stomped and kicked Thompson, Spears grabbed Powell and Johnson by the arm, produced a knife and said they had to kill Thompson because he could testify against them. After stabbing Thompson repeatedly, Spears, Powell and Johnson fled from the cemetery with Thompson's truck and wallet and made plans to dispose of the incriminating evidence. Spears also told Hensley she better tell the alibi story he concocted or they would all "get in trouble for all this." When Spears' alleged flight is viewed in the context of this evidence, it tends to establish his guilt or innocence. Thus, we find the

flight instruction was properly given. *Rivers*, 889 P.2d at 292. Because the flight instruction was properly administered, we find counsel was not deficient in failing to object to its administration.

Fifth, Spears claims counsel should have objected to several statements of the prosecutor which, he claims, invoked societal alarm. Spears fails to cite and it is not apparent how he was prejudiced by these comments. Spears must not only demonstrate a serious deficiency in counsel's performance, he must also show the deficiency prejudiced the defense so seriously as to make the result of the trial unreliable. *Brecheen v. State*, 732 P.2d 889, 898 (Okl.Cr. 1987), *overruled on other grounds, Brown v. State*, 871 P.2d 56 (Okl.Cr.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 517, 130 L.Ed.2d 423 (1994). A review of the record shows the comments complained of fall within the wide range of argument accepted by this Court. On the record before us, we cannot find that counsel's performance fell below that of reasonably effective counsel under the circumstances. As stated above, because Spears fails to state or show how he was prejudiced by counsel's failure to object, we find his claim is fatally defective.

Sixth, Spears claims counsel should have requested instructions on voluntary intoxication and first degree diminished capacity manslaughter. Spears argues there was substantial evidence that he consumed large quantities of alcohol rendering counsel's failure to request instructions on voluntary intoxication and first degree diminished capacity manslaughter clearly ineffective assistance.

Jury instructions on lesser included offenses or theories of defense need only be given when there is evidence in the record to support such instructions. *Bryson v. State*, 876 P.2d at 255; *Foster v. State*, 714 P.2d 1031 (Okl.Cr.1986), *cert. denied*, 479 U.S. 873, 107 S.Ct. 249, 93 L.Ed.2d 173 (1986); *Green v. State*, 611 P.2d 262, 266 (Okl.Cr.1980), *cert. denied*, 449 U.S. 1102, 101 S.Ct. 898, 66 L.Ed.2d 828 (1981). Because Spears presented no evidence in the first stage of trial, voluntary intoxication and first degree dimin-

ished capacity manslaughter instructions would be warranted only if the evidence presented by the State established he was so intoxicated that his mental abilities were totally overcome and intoxication prevented him from forming malice. *Bryson,* 876 P.2d at 255.

■ Our review of the evidence shows that it was not sufficient to support voluntary intoxication and first degree diminished capacity manslaughter instructions. While testimony was given to the effect that Spears had consumed beer and alcohol the night of the murder, the record does not support a finding, based solely on evidence presented by the State, that at the time of the murder Spears was under the influence of any intoxicant to the extent that he was unable to form the necessary intent to commit first degree malice murder. *See Hogan v. State,* 877 P.2d 1157, 1161 (Okl.Cr.1994); *Bryson,* 876 P.2d at 255; *Mann v. State,* 749 P.2d 1151, 1156–57 (Okl.Cr.1988), *cert. denied,* 488 U.S. 877, 109 S.Ct. 193, 102 L.Ed.2d 163 (1988). Hensley, Daniels and Johnson described Spears as "feeling good" but not drunk, having a "pretty good dose", and having a "pretty good buzz on." Johnson testified he knew what he was doing and the risks of his conduct and that at some point he, Spears and Powell intended to kill Thompson. After the murder, Spears was able to concoct an alibi, discuss plans for selling Thompson's truck in Tulsa and confirm Johnson's self defense claim to LaShonda Austin. Based on this evidence, we find voluntary intoxication and first degree diminished capacity manslaughter instructions were not warranted. *Crawford,* 840 P.2d at 638; *Mann,* 749 P.2d at 1156. Therefore, counsel did not err in failing to request such instructions.

Lastly, Spears argues if the specific omissions of counsel listed above do not warrant reversal, their cumulative effect does. Because the individual omissions were not error, the accumulation of omissions are not error and do not require reversal or modification. *Brecheen,* 732 P.2d at 897. We have carefully reviewed the record and find counsel exercised the skill, judgment and diligence of a competent defense attorney under the circumstances. Because Spears received effective assistance of counsel, we find this proposition is without merit.

## ISSUES RELATING TO PUNISHMENT

In his sixteenth proposition of error, Spears contends the State failed to prove the aggravating circumstance that "the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution." 21 O.S.1981, § 701.12(5). Spears argues the State failed to prove he killed Thompson to avoid arrest or prosecution.

■ It is the State's burden to prove beyond a reasonable doubt the aggravating circumstances it elects to charge. *Perry,* 893 P.2d at 533. On appeal, we review the sufficiency of the evidence in the light most favorable to the State to determine whether there was any competent evidence to support the jury's finding of the aggravating circumstance. *Id.; Bryson,* 876 P.2d at 259.

■ To support a finding of this aggravating circumstance the State must prove the defendant killed in order to avoid arrest or prosecution. *Carter v. State,* 879 P.2d 1234, 1250 (Okl.Cr.1994). The defendant's intent is critical. *Munson v. State,* 758 P.2d 324, 335 (Okl.Cr.1988), *cert. denied,* 488 U.S. 1019, 109 S.Ct. 820, 102 L.Ed.2d 809 (1989); *Stouffer v. State,* 738 P.2d 1349, 1361–62 (Okl.Cr.1987), *cert. denied,* 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988); *Banks v. State,* 701 P.2d 418, 426 (Okl.Cr.1985). However, as in other areas of criminal law, the defendant's intent can be proved by circumstantial evidence. *Snow v. State,* 876 P.2d 291, 299 (Okl.Cr.1994) and cases cited therein. There must also be a predicate crime, separate from the murder, for which the defendant seeks to avoid arrest or prosecution. *Barnett,* 853 P.2d at 233.

■ In the instant case the evidence showed Spears and Powell discussed beating Thompson and taking his truck before they arrived at the cemetery. At the cemetery Powell told Spears he would initiate the beating and advised Spears and Johnson to join in. Spears and Powell then carried out their plan to beat and rob Thompson. After administering the severe beating, Spears

grabbed Powell and Johnson by the arm, produced a knife and said they had to kill Thompson because he could testify against them. After stabbing Thompson, Spears, Powell and Johnson took Thompson's truck and wallet and made plans to dispose of them along with Spears' knife. Spears told Hensley she better tell the alibi story he concocted or they would all "get in trouble for all this." From this evidence a rational jury could find Spears had motive to rob Thompson, stopped at the cemetery to commit the robbery, voluntarily joined in the beating and stabbing of Thompson to avoid arrest for the theft of Thompson's truck, took Thompson's truck and wallet and directed disposal of the incriminating evidence. *Accord Carter*, 879 P.2d at 1234; *Fox v. State*, 779 P.2d 562, 575–76 (Okl.Cr.1989), *cert. denied*, 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990); *Munson*, 758 P.2d at 335. Because we find ample evidence to support the jury's finding of this aggravator, this proposition is denied.

In his seventeenth proposition of error, Spears contends the trial court committed reversible error in failing to instruct the jury in the punishment stage of trial that he could not be sentenced to death unless the jury found he killed Thompson, intended that Thompson be killed, intended that lethal force be used or acted with reckless indifference to human life. *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) and *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987). In *Enmund*, 458 U.S. at 797, 102 S.Ct. at 3376, 73 L.Ed.2d at 1151, the Supreme Court held that a defendant cannot receive a sentence of death for felony murder committed by an accomplice unless the defendant knew the killing would take place, knew lethal force would be used, killed, or attempted killing. *See Allen v. State*, 874 P.2d 60, 64 (Okl.Cr. 1994). In *Tison*, 481 U.S. at 158, 107 S.Ct. at 1688, 95 L.Ed.2d at 145, the Supreme Court modified *Enmund* holding that a defendant who was a major participant in the felony committed and who displayed reckless indifference to human life may be sufficiently culpable to receive the death penalty. *See also McCracken v. State*, 887 P.2d 323, 332 (Okl.Cr.1994).

In *Stiles v. State*, 829 P.2d 984, 992 (Okl.Cr.1992), this Court held the *Enmund* holding inapplicable to an appellant who entered a restaurant with a lethal weapon and intentionally fired at a person. As in *Stiles* the *Enmund/Tison* holdings do not apply to Spears because he admitted his intent to kill Thompson and was a major participant in the felony who displayed reckless indifference to Thompson's life. Spears willingly entered the brutal attack on Thompson, repeatedly struck, kicked and stomped him, intended to kill him and instigated and repeatedly stabbed him. Because no *Enmund/Tison* instruction was warranted, we find the trial court did not err in failing to so instruct and counsel did not err in failing to so request. Accordingly, this proposition is denied.

In his last proposition of error, Spears asserts that insufficient evidence was presented to support the especially heinous, atrocious or cruel aggravating circumstance. The State concedes the medical testimony is inconclusive, but argues the testimony of Mickey Daniels clearly established Thompson suffered conscious physical suffering prior to his death. *Nuckols v. State*, 805 P.2d 672 (Okl.Cr.1991), *cert. denied*, 500 U.S. 960, 111 S.Ct. 2276, 114 L.Ed.2d 727 (1991).

As discussed above the State bears the burden of proving beyond a reasonable doubt the aggravating circumstances it elects to charge. *Perry*, 893 P.2d at 533. *See also* Oklahoma Uniform Jury Instruction–Criminal (OUJI–CR) 435. We must now determine whether there was any competent evidence to support the jury's finding the murder was especially heinous, atrocious or cruel. *Perry*, 893 P.2d at 533; *Bryson*, 876 P.2d at 259.

In order for a jury to find that a murder was especially heinous, atrocious or cruel, the State must introduce competent evidence indicating the victim's death was preceded by torture or serious physical abuse, which may include the infliction of either great physical suffering or extreme mental cruelty. *Perry*, 893 P.2d at 533–34; *Booker*, 851 P.2d at 548; *Battenfield*, 816 P.2d at 565. Serious physical abuse requires evidence of *conscious* physical suffering. *Perry*, 893 P.2d at 534; *Stafford*, 832 P.2d at 23. As we stated in

*Perry,* 893 P.2d at 534, it is critical the State prove the victim consciously suffered prior to death. Prosecutors have proved this aggravator by introducing evidence the victim suffered numerous defensive wounds indicating that the victim was conscious and attempted to fight off her attacker; statements from the defendant indicating the victim consciously suffered serious physical abuse or extreme mental cruelty prior to death; witness testimony that the victim was alive and conscious at the time the physical abuse was inflicted; or medical evidence that the victim was conscious during the infliction of serious physical injury. *Id.* and cases cited therein.

[redacted] In the present case there was sufficient evidence to support the especially heinous, atrocious or cruel aggravating circumstance. There was a plethora of evidence Thompson endured serious physical anguish prior to his death. Further, there was evidence Thompson was conscious during the beating. Mickey Daniels testified when asked if Thompson made any noises or sounds during the beating, "[h]e was—he was laying there. And he was hollering. He have (sic) wasn't really saying any words, he was just moaning all around." Daniels again characterized the noises Thompson made as "hollering" and "moaning" and noted he could tell Thompson was hurting. Viewing Daniels' testimony in the light most favorable to the State, *Bryson,* 876 P.2d at 259, we find such testimony sufficient to allow a rational jury to conclude Thompson was conscious during the beating which preceded his death. Accordingly, this proposition of error is denied.

[redacted] Spears also challenges the jury instruction in the second stage of trial which defined the aggravating circumstance "especially heinous, atrocious, or cruel". The instruction given in this case limited the application of this aggravator by stating the "phrase especially heinous, atrocious, or cruel is directed to those crimes where the death of the victim was preceded by torture or serious physical abuse." Spears claims this instruction is too vague. We recently rejected this same argument in *Mayes v. State,* 887 P.2d 1288, 1319 (Okl.Cr.1994). *See also Nuckols,* 805 P.2d at 674. The law is settled and we are unpersuaded to address this issue again. *Mayes,* 887 P.2d at 1319 and cases cited therein. Accordingly, this proposition is denied.

Spears also argues the addition of the "serious physical abuse requirement does not and cannot limit the unconstitutionally vague definitions of the terms "heinous", "atrocious" and "cruel." This argument has been consistently rejected by this Court and was recently rejected in *Long v. State,* 883 P.2d 167, 174–75 (Okl.Cr.1994) and cases cited therein. Again, the law is settled. We find this proposition is without merit.

## MANDATORY SENTENCE REVIEW

[redacted] Pursuant to 21 O.S.1991, § 701.13(C), this Court must determine (1) whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor, and (2) whether the evidence supports the jury's finding of aggravating circumstances as enumerated in 21 O.S.Supp.1991, § 701.12. As noted above the State presented sufficient evidence to prove Spears murdered Thompson to avoid arrest or prosecution and that the murder was especially heinous, atrocious or cruel. *See* PROPOSITIONS XVI AND XVIII, *supra.* In mitigation Spears presented evidence of his youth, intoxication at the time of the murder, incomplete public education, the existence of loving relationships with his family, his potential for rehabilitation, and his lack of prior convictions for violent crimes. After carefully reweighing the aggravating circumstances and all mitigating evidence, we find the aggravating circumstances outweigh the mitigating evidence and that the sentence of death is factually substantiated and appropriate. Finding no error warranting reversal or modification, the Judgment and Sentence is AFFIRMED.

JOHNSON, P.J., CHAPEL, V.P.J., and LUMPKIN and LANE, JJ., concur.