Filed 9/30/14  P. v. Williams CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D063742 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD232839) |
| JAMES MICHAEL WILLIAMS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Charles Rogers, Judge.  Affirmed in part; reversed in part and remanded with directions.

Robert E. Boyce, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Barry Carlton, Deputy Attorney General, for Plaintiff and Respondent.

James Michael Williams appeals from a judgment convicting him of rape and two counts of forcible oral copulation. He argues his convictions must be reversed because the court erred in allowing the jury to be presented with evidence that he had committed a prior sex offense in Oklahoma. We find no error and affirm the judgment as to his convictions.

As to sentencing, defendant argues the trial court erred in (1) finding that one of his Oklahoma convictions (kidnapping for extortion with intent to commit rape) qualified as a strike prior conviction and a serious felony prior conviction, and (2) enhancing his sentence for both a serious felony prior conviction and a prior prison term. For reasons we shall explain, we conclude the strike prior based on the Oklahoma kidnapping conviction must be reversed, but we reject defendant's challenges to the prior serious felony and prior prison term enhancements.

Accordingly, we reverse the strike prior finding based on the Oklahoma kidnapping conviction; reverse the sentence; and remand for further proceedings. In all other respects, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On the night of March 8, 2011, the victim (L.B.) and her friend (Stacy) were at a bar drinking. Shortly before the bar's closing at 2:00 a.m., defendant approached them, offered to buy them drinks, and told L.B. she could model for his line of high quality leather clothing. When the bar closed, the two women agreed to go with defendant to his RV at a nearby parking lot because L.B. wanted to keep talking about the modeling opportunity. While at the RV, they continued to drink and talk about defendant's

2

business.  Defendant said he wanted to talk with L.B. alone, and around 3:30 or 4:00 a.m. Stacy went home and L.B. stayed with defendant.  Defendant told L.B. that what he really wanted was for her to "go on the road" with him to "expo" shows and to take care of all his financial matters.

As their conversation continued, defendant said he wanted L.B. to "be his girl" and have sex; she responded she wanted to model for him but did not want to have sex with him.  While seated at the table in the RV, defendant tried to kiss L.B.  She "let him for a second and then stopped the kiss" and "gently pushed him away" because she did not want to kiss him.  Defendant was talking about taking her to breakfast, and L.B. suggested a local restaurant.  Defendant drove a couple of blocks to a gas station and bought some cigarettes, while L.B. stayed in the RV.  When defendant returned to the RV, L.B. started feeling "a little worried" because he drove back to the parking lot rather than to the restaurant.  After L.B. asked what "was going on," defendant told her he would give her $10,000 to "lick [her] pussy."  L.B. said she did not want that, and when she started gathering her things to go home, defendant "turned really aggressive."  He stood by the door, told her she was not going home, pushed her to keep her from getting to the door, "pulled out something" from a drawer that she thought was a knife, and held the object to her throat and said she was not leaving.  When describing defendant's use of a weapon, L.B. testified her memory was "kind of blurry" about this.

After this confrontation, defendant put the object away and told her he had a "change of heart" and he would let her go if she did not want to be there.  However, when she told him she wanted to leave, he punched her a couple of times in the face with his

3

fist. After he punched her, she complied with his directive to get undressed because she thought he would hurt her if she did not. Thereafter, because she was afraid, the victim cooperated with defendant's demands that she engage in sexual activity with him, including two acts of oral copulation on him and sexual intercourse. L.B. testified that he also penetrated her vagina with his fingers, but explained she did not remember this portion of the incident very well.

L.B. testified she did not want to engage in any of the sexual activity with defendant, but did so because she was afraid he would hurt or kill her. She described various threats that defendant made during the course of the incident, including that the next day they were going to the Hell's Angels' headquarters where they would copy her driver's license so they would know her address, he had a gun between the two front seats, and if she contacted the police he would slit her throat. At one point he again offered to let her leave, but because he had hit her when he said this previously, she told him that she would stay.

L.B. escaped from the RV when defendant fell asleep. As she was leaving, she grabbed a "wad of cash" that defendant had showed her that night, testifying this was "stupid" but she was not thinking clearly and thought she "should get something out of this horrible experience." She ran to Stacy's home and told Stacy that defendant had raped her. Stacy testified that L.B. was "really riled up," "very agitated," and in a state of "disbelief, shock." The two women called 911. The police took the women to the RV, where defendant was identified by the women and arrested. When an officer asked L.B.

4

about the money defendant had in the RV, L.B. told the officer she took it. The women retrieved the money from Stacy's home and gave it to the police.

To support defendant's culpability, the prosecution also presented testimony from defendant's jailmate, and from the victim of the prior sex offense committed by defendant in Oklahoma. Defendant's jailmate (Lawrence Morris) testified that while they were in custody together, defendant solicited him to seek out witnesses who would fabricate testimony that would support that he was robbed by two women at his RV and that he had a history of consensual sexual activity with women. When Morris was released from jail, he gave the district attorney's office the written instructions defendant had provided him for purposes of securing this fabricated testimony. When Morris later returned to jail for a parole violation, Morris was assaulted by inmates for being a "rat" against defendant.

The prior sex offense victim (C.B.) described a sexual assault committed by defendant against her in 1984 in Oklahoma. C.B. testified that at the time of the incident, she was 21 years old and just recently married. While she was working a graveyard shift alone at a convenience store, defendant arrived at the store and asked if he could park his motorcycle in the parking lot for several hours. C.B. had seen defendant at the store earlier that night but she did not know him. At defendant's request, C.B. went outside to show him where he could park his motorcycle. Defendant, who was standing behind her, held a knife to her throat and told her if she did not leave with him on his motorcycle he would kill her. C.B. went with defendant on his motorcycle, and he drove her to various remote locations. At one location he forced her to orally copulate him, and at another he

5

told her to get undressed and he raped her. During the course of the incident he repeatedly threatened to kill her, and at one point choked her to the point of unconsciousness. While driving on the motorcycle with C.B., defendant was stopped by the police because C.B. had been reported missing. Defendant was arrested and later pled guilty to kidnapping for extortion with the intent to rape, and rape.[1]

*Jury Verdict and Sentence*

Defendant was charged with rape, two counts of forcible oral copulation, rape by a foreign object, and false imprisonment by violence. The jury convicted him of rape (count 1) and forcible oral copulation (counts 2 and 3). The jury was unable to reach a verdict on the rape by foreign object and false imprisonment counts. The information also alleged that defendant personally used a knife for each count, and the jury found these allegations not true.[2]

For purposes of sentencing, based on the 1984 Oklahoma case the information alleged that defendant was a habitual sex offender and that he had incurred a prior prison term, a prior serious felony conviction, and two strike prior convictions. The prosecution's evidence showed that in the Oklahoma case defendant pled guilty to kidnapping for extortion with intent to rape, and rape. The court ruled defendant had served the alleged prior prison term, and the Oklahoma convictions qualified under

---

[1]    The Oklahoma offense of kidnapping for extortion is construed as including kidnapping with intent to rape. (*Householder v. Ramey* (Okla. App. 1971) 485 P.2d 247, 248 [chastity is thing of value that may be extorted].)

[2]    The instant trial was defendant's second trial for these charges. The first trial resulted in a deadlocked jury.

6

California law for purposes of the habitual sex offender, prior serious felony, and strike allegations. For each of the three counts, the court imposed a 25-year-to-life term under the habitual sex offender statute, which terms were then tripled to 75 years to life under the Three Strikes statute. Additionally, for each count the court imposed a five-year term for the serious felony prior conviction, and a one-year term for the prior prison term.[3] Defendant's total sentence was a determinate term of 18 years, plus an indeterminate term of 225 years to life.

## DISCUSSION

### I. *Prior Sex Offense Evidence*

Defendant asserts the court violated due process and abused its discretion by admitting the evidence of his prior sex offense.

Over defense objection, the prosecution was permitted to introduce the evidence of defendant's 1984 sex offense in Oklahoma. The jury was instructed that it could consider the evidence to show defendant was inclined to commit sexual offenses, and also when deciding whether in the charged offenses he acted with the required wrongful intent and did not act under a mistaken belief in consent. Defendant asserts that admission for both of these purposes was improper.

---

[3] The court applied the serious felony and prison term enhancements to each count because the sentences for these counts were indeterminate (rather than determinate) terms. (*People v. Williams* (2004) 34 Cal.4th 397, 400, 402-405.)

*Governing Law*

Evidence of other crimes committed by the defendant is generally inadmissible to prove the defendant has a propensity to commit crimes. (*People v. Catlin* (2001) 26 Cal.4th 81, 145.) However, Evidence Code section 1108 (section 1108) sets forth an exception to the general rule against the use of propensity evidence. (*People v. Falsetta* (1999) 21 Cal.4th 903, 911.) When a defendant is charged with a sex offense, section 1108 allows admission of evidence of other sex offenses to prove the defendant's disposition to commit sex offenses, subject to the trial court's discretion to exclude the evidence under Evidence Code section 352 (section 352). (§ 1108, subd. (a); *Falsetta*, at p. 911; *People v. Lewis* (2009) 46 Cal.4th 1255, 1286.) In *Falsetta,* the California Supreme Court ruled that section 1108 was constitutional. (*Falsetta*, at pp. 910-922.) The *Falsetta* court reasoned that sex offense propensity evidence was critical in sex offense cases given the serious and secretive nature of sex crimes. (*Id.* at p. 918.) Further, a defendant's constitutional right to a fair trial is properly safeguarded by requiring the trial court to engage in a careful weighing process under section 352 to determine whether probative value is substantially outweighed by the danger of undue prejudice, confusion, or time consumption. (*Falsetta*, at pp. 916-917) Based on section 1108, "the presumption [is] in favor of admissibility" of uncharged sex offense evidence. (*People v. Loy* (2011) 52 Cal.4th 46, 62.)

Evidence of the defendant's other crimes is also admissible under section 1101, subdivision (b) (section 1101(b)) for the limited purpose of proving such matters as intent or lack of mistake. (*People v. Catlin*, *supra*, 26 Cal.4th at p. 145.) Admission under

8

section 1101(b) is also subject to the trial court's discretion to exclude the evidence under section 352 if the potential for prejudice outweighs the probative value. (*People v. Balcom* (1994) 7 Cal.4th 414, 426.)

The decision whether to apply section 352 to exclude otherwise admissible evidence " 'is entrusted to the sound discretion of the trial judge who is in the best position to evaluate the evidence.' " (*People v. Falsetta*, *supra*, 21 Cal.4th at pp. 917-918.) On appeal we will not disturb the trial court's ruling unless the court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a miscarriage of justice. (*People v. Lewis*, *supra*, 46 Cal.4th at p. 1286.)

*Analysis*

Defendant argues the evidence of his Oklahoma sex offense should have been excluded because (1) section 1108 violates his right to due process under the federal Constitution, and (2) the court abused its discretion under section 352. The constitutional challenge is unavailing. As defendant recognizes, the California Supreme Court has found section 1108 to be constitutional. (*People v. Falsetta*, *supra*, 21 Cal.4th 903.) We are bound to follow our high court's ruling. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455; see *People v. Loy*, *supra*, 52 Cal.4th at pp. 60-61 [declining to reconsider *Falsetta*].)

To support his claim the court abused its discretion in admitting the evidence, defendant argues the prior and current incidents were dissimilar, the prior offense was remote and more inflammatory, and there was a risk the jury would convict to punish him for the prior offense.

9

Although the similarity between the prior and current sex offenses is a relevant factor to consider when conducting the weighing process under section 352 (*People v. Lewis*, *supra*, 46 Cal.4th at p. 1285), there is no strict similarity requirement for admission of the evidence. (See *People v. Loy*, *supra*, 52 Cal.4th at p. 63; *People v. Robertson* (2012) 208 Cal.App.4th 965, 991.) Here, in both the Oklahoma and current offenses, defendant lured a woman late at night to a location where she was more vulnerable, used force and threats to compel her to comply with his sexual demands, and engaged in oral copulation and sexual intercourse with her. Although there were some factual differences between the two offenses (for example, the current offense, unlike the prior offense, involved drinking and socializing prior to the assaultive behavior), they were not so dissimilar as to significantly diminish the high probative value of the prior offense. Nor was the prior offense unduly inflammatory as compared to the current offense; both offenses involved threats of serious injury or death that caused the victims to comply with defendant's sexual demands, and sexual activity of a comparable invasiveness. Remoteness was of minimal significance; although the 1984 Oklahoma offense occurred many years prior to the current offense, the record shows defendant was in prison until September 2009 and he committed the current offense in March 2011, which was *less than two years* after his release from prison. (See *People v Loy*, *supra*, 52 Cal.4th at p. 62.)

Defendant argues the jurors may have improperly wanted to punish him for the prior offense because they may have inferred he did not serve a lengthy prison term given his talk about his successful business during the charged incident. Defendant has not

10

shown an abuse of discretion based on this claim. The jurors knew from L.B.'s testimony that defendant had been in prison, and the jurors could have just as easily inferred that defendant's talk about his business was a fabricated story to keep L.B. interested rather than an indication that he had not spent much time in prison.[4] Further, the court explicitly instructed the jurors that uncharged offense evidence was not sufficient by itself to prove the charged crimes, and the prosecution had to prove each charge beyond a reasonable doubt. (See CALCRIM Nos. 1191, 375.) The fact that the jurors acquitted defendant of the personal weapon use allegation reflected they were aware of their duty to carefully evaluate the evidence and they knew they could not convict merely because he had engaged in criminal conduct in the past. (See *People v. Robertson*, *supra*, 208 Cal.App.4th at p. 994.)

Finally, defendant contends the court should not have admitted the evidence under section 1101(b) on the issues of intent or belief in consent because the evidence was cumulative on these issues. In support, he cites *People v. Balcom*, *supra*, 7 Cal.4th 414, where the court held prior offense evidence was merely cumulative (and hence more prejudicial than probative) because the victim's testimony, if believed, that the defendant held a gun to her head provided compelling evidence of the defendant's intent during sexual intercourse. (*Id*. at pp. 422-423.) Defendant posits that, likewise here, the victim's testimony, if believed, provided compelling evidence of his intent and absence of belief

---

4    L.B. testified defendant disclosed he had been in prison before.

in consent so as to substantially diminish the probative value of the prior sex offense evidence. We are not persuaded.

Unlike the circumstances in *Balcom*, L.B.'s testimony did not so definitively establish defendant's state of mind as to require the court to disallow consideration of the prior offense evidence on the issues of intent and belief in consent. Although L.B. described numerous facts supporting that defendant engaged in forcible sexual conduct, she also described several factors relevant to a contrary conclusion concerning defendant's state of mind, including her voluntary decision to go with defendant to his RV, her initial allowance of his kissing her, her statement to defendant that she would stay when he told her she could leave, and her decision to take defendant's money. The court was not required to find the nature of the victim's testimony was so clear cut that, if credited, it rendered the prior offense evidence merely cumulative as to defendant's state of mind.

## II. *Sentencing Issues*

As set forth above, defendant was convicted in the current case of forcible rape and two counts of forcible oral copulation. His Oklahoma prior convictions for kidnapping for extortion with intent to rape and forcible rape were used for four purposes: (1) to sentence him on each count to 25 years to life under the habitual sex offender statute (§ Pen. Code,[5] § 667.71, subds. (a), (b)); (2) to impose a five-year prior serious felony conviction enhancement for each count (§ 667, subd. (a)(1)); (3) to impose

---

[5]     Subsequent statutory references are to the Penal Code unless otherwise indicated.

a one-year prior prison term enhancement for each count (§ 667.5, subd. (b)); and (4) to triple his sentence for each count (from 25 years to life to 75 years to life) based on two strike priors under the Three Strikes law (§ 667, subd. (e)(2)(A)(i)).

Defendant does not challenge the imposition of 25-year-to-life terms for each count under the habitual sex offender statute. Nor does he dispute that his Oklahoma *rape* conviction qualifies as a strike prior conviction and a serious felony prior conviction under California law. However, he argues his Oklahoma *kidnapping* conviction was not shown to qualify as a strike prior because, unlike California law, movement of the victim is not required for kidnapping in Oklahoma and the reviewable record of the prior conviction does not show the victim was moved. We agree.

Applying the same reasoning, defendant also challenges the five-year prior serious felony enhancements, arguing the Oklahoma kidnapping conviction does not qualify as a serious felony. Further, he contends the Oklahoma *rape* conviction could not be used to impose the serious felony enhancements because of the pleading language set forth in the information. Although we agree the kidnapping conviction was not shown to qualify as a serious felony, we reject defendant's contention that the Oklahoma rape conviction could not be used to support the serious felony enhancements.

Finally, if the serious felony enhancements are not stricken, defendant argues the one-year prison term enhancements cannot be sustained because both the serious felony enhancements and the prison term enhancements were based on the same Oklahoma kidnapping conviction. We reject this claim. Given our holding that the serious felony

13

enhancements are supported by the rape conviction, the prison term enhancements are properly supported by the kidnapping conviction.

A. *Insufficient Evidence for Use of Oklahoma Kidnapping Conviction as a Strike*

The Three Strikes law sets forth a sentencing scheme that applies when a defendant has incurred one or two prior convictions that qualify as strikes. If the defendant has one strike prior conviction, the defendant is sentenced to two times the term otherwise provided for the current felony conviction. (§ 667, subd. (e)(1).) If the defendant has two strike prior convictions, the defendant can be sentenced to three times the term otherwise provided for the current felony conviction. (§ 667, subd. (e)(2)(A)(i).) The offenses that qualify as strikes are statutorily defined violent or serious felonies, and include rape and kidnapping. (§§ 667, subd. (d)(1), 667.5, subd. (c)(3), (14).)

A prior conviction from another jurisdiction qualifies as a strike if the out-of-state conviction includes all the elements of a strike offense in California. (§ 667, subd. (d)(2).) To determine if the prior conviction contains all the elements of a strike offense, the trier of fact "may 'look beyond the judgment to the entire record of the conviction' . . . but '*no further*.' " (*People v. Trujillo* (2006) 40 Cal.4th 165, 177.) This limitation on permissible evidence protects the defendant's right not to be subjected to double jeopardy through relitigation of the circumstances of the crime after he or she has already incurred the prior conviction. (*Ibid.*) The record of conviction refers to matters in the record that establish the facts of the offense for which the defendant was convicted. (*Id.* at pp. 179-180; see, e.g., *People v. Sample* (2011) 200 Cal.App.4th 1253, 1261

14

[prosecutor's recitation of factual basis during guilty plea hearing is part of record of conviction].)

However, matters that occur *after* the defendant's conviction are not considered part of the record of conviction to the extent they do not "*disclose the facts upon which the conviction was based*." (*People v. Trujillo*, *supra*, 40 Cal.4th at p. 180, italics added.) For example, a description in an abstract of judgment is considered part of the record of conviction because it is "an official government document, prepared contemporaneously as part of the judgment record and describ[es] the prior conviction . . . ." (*People v. Miles* (2008) 43 Cal.4th 1074, 1083; see *People v. Self* (2012) 204 Cal.App.4th 1054, 1059.) In contrast, statements made after the entry of a guilty plea are not considered part of the record of conviction if they were not used to establish the conviction. (*People v. Trujillo*, *supra*, 40 Cal.4th at p. 180 [defendant's admissions in probation report not part of record of conviction]; *People v. Roberts* (2011) 195 Cal.App.4th 1106, 1114-1115, 1126-1128 [statements of defendant and others for purposes of sentencing not part of record of conviction].) Further, "[o]n review, we examine the record in the light most favorable to the judgment to ascertain whether it is supported by substantial evidence. In other words, we determine whether a rational trier of fact could have found that the prosecution sustained its burden of proving the elements of the sentence enhancement beyond a reasonable doubt." (*People v. Miles*, *supra*, 43 Cal.4th at p. 1083.)

Kidnapping in California requires asportation (movement of the victim). (§ 207; *People v. Castenada* (2011) 51 Cal.4th 1292, 1319.) In contrast, kidnapping in Oklahoma does not require movement, and the offense is established if the victim is

15

merely confined.  (Okl. Stat. tit. 19, § 741 [kidnapping]; Okl. Stat. tit. 21, § 745 [kidnapping for extortion]; *Turner v. State* (1990) 786 P.2d 1251, 1254-1255; see *Perry v. State* (Okl. 1988) 764 P.2d 892, 897.)  The Attorney General does not dispute that the Oklahoma kidnapping offense lacks the asportation element, but argues the record of the Oklahoma conviction shows that movement of the victim occurred.  We are not persuaded.

The record of the Oklahoma conviction submitted to the trial court includes the information and defendant's guilty plea.  With respect to the kidnapping count, the information refers to the offense as kidnapping for extortion, and alleges the offense was committed when defendant "did unlawfully, wilfully and feloniously without lawful authority, forcibly seize, kidnap and confine [C.B.] from a place in Lincoln County, Oklahoma, to wit:  Brick Hill Convenience Store with the unlawful and felonious intent then and there on the part of said defendant to rape the said [C.B.] and to cause her to have sexual relations against her will."  The guilty plea describes the offense simply as "kidnapping for extortion."  These documents do not contain substantial evidence showing that defendant physically moved the victim away from the place where he seized her.  Because Oklahoma does not require asportation for kidnapping, the use of the term "kidnap" does not suffice to show movement.  Further, contrary to the Attorney General's contention, the phrase "from a place in Lincoln County" is too vague to adequately establish that there was movement from the place of seizure.  If the information had alleged a second point of location this would have been sufficient; however, because it

16

only mentions a single location the use of the word "from" standing on its own cannot reasonably support a finding of movement.

The trial court was also provided with a document entitled "District Attorney's Narrative Report" which states that it describes the "state's version" of the offense and sets forth facts showing movement of the victim. This report was prepared pursuant to an Oklahoma statute that states the prosecution must prepare the report "[u]pon the arrest, conviction and sentencing of any defendant to the custody of the Department of Corrections" for a sentence in excess of two years; the report must describe "the commission of the offense and any factors which might enhance or diminish the gravity of the offender's conduct"; the prosecution must submit the report to the "Department of Corrections and the Pardon and Parole Board, together with the judgment and sentence"; and the defendant cannot use the recitations in the report to support any cause of action without first submitting a written objection to the recitations. (Okl. Stat. tit. 19, § 215.39.)

The district attorney's narrative report cannot properly be used to establish the facts underlying defendant's conviction. Akin to a probation report and unlike statements at a change-of-plea hearing, the report consists of information that was presented *after* defendant's conviction and *not* used to accomplish defendant's conviction. That is, although the narrative report discloses factual claims by the prosecutor, these factual

17

claims were submitted postconviction and were not part of the factual matters that were provided to establish the conviction.[6]

We note that although it is clear from the Oklahoma victim's testimony in the *current* proceedings that the victim was moved during the incident, it is well established that the prosecution is *not* permitted to call witnesses to testify in the current case to establish the facts underlying a prior conviction for purposes of sentence enhancements. (*People v. Kelii* (1999) 21 Cal.4th 452, 456-457.)  As stated earlier, the rules limiting the prosecution's proof to matters that are contained in the *record of the prior conviction* are based on double jeopardy concerns that would arise if the factual underpinnings of prior convictions were allowed to again be litigated in postconviction proceedings.  (*People v. Trujillo*, *supra*, 40 Cal.4th at p. 177.)  Accordingly, the Oklahoma victim's testimony regarding the incident that was presented in the current proceedings cannot be used to establish the offense as a strike prior.

The record does not support that the Oklahoma kidnapping conviction constitutes a strike, and accordingly this strike prior finding must be reversed.

### B.  *Serious Felony Enhancement*

Section 667, subdivision (a)(1) requires the imposition of a five-year enhancement when a defendant convicted of a statutorily defined serious felony in the current case has a prior conviction for a statutorily defined serious felony.  The statutorily defined serious

---

6      Because we conclude the prosecutor's narrative was not part of the record of conviction, we need not address defendant's argument that admission of the report violated his constitutional right to confront witnesses.

18

felonies include rape and kidnapping. (§§ 667, subd. (a)(4), 1192.7, subds. (c)(3), (c)(20).) For the reasons set forth above, defendant is correct that the Oklahoma kidnapping conviction cannot qualify as a prior serious felony for this enhancement.

Defendant does not dispute that his Oklahoma *rape* conviction qualifies as a prior serious felony, but he contends it cannot be used for this enhancement because it was not properly pled in the information. For the habitual sex offender, prior serious felony, and prior prison term allegations, the information identified the Oklahoma case by the term "Kidnapping." For the two prior strike allegations, the information initially pled one strike prior allegation, denominated "Kidnapping," and at trial the prosecution added the second strike prior allegation, denominated "Rape." Under the circumstances of this case, we find no pleading barrier to the use of the Oklahoma rape conviction to support the prior serious felony enhancement.

As a matter of due process, a defendant has a right "to fair notice of the specific sentence enhancement allegations that will be invoked to increase punishment for his crimes." (*People v. Mancebo* (2002) 27 Cal.4th 735, 747.) Here, the serious felony prior conviction alleged in the information described the "Charge" as "Kidnapping," and provided the date of the conviction, the court case number, and the county and state where the conviction was incurred. From this allegation, defendant knew the prosecution was seeking to impose the five-year serious felony enhancement based on his Oklahoma case. Also, prior to trial the defense was provided with copies of the Oklahoma court documents, which reflected that the Oklahoma case involved two convictions, i.e., the kidnapping count and the rape count. Although the information in the current California

19

case referred to the Oklahoma conviction merely as "Kidnapping," the Oklahoma court documents apprised defendant of the specific nature of the charges, including kidnapping for extortion (defined as seizing, kidnapping, and confining with intent to commit rape) and first degree rape.

On appeal, defendant does not claim that he was not on notice that his Oklahoma case included a rape conviction, and the record supports that he knew in a timely fashion that the rape conviction was a component of the Oklahoma case. For example, during trial (for purposes of the prior sex offense evidence) the parties stipulated to the two convictions underlying the Oklahoma case. Thereafter, while the jury was in deliberations, the prosecutor successfully moved to amend the information to allege rape as a second strike arising from the Oklahoma case. Although defense counsel objected to the amendment as untimely, he did *not* argue that defendant was prejudicially deprived of notice of the rape conviction even though the court invited him to address this point. Later, at sentencing, the trial court stated the "Oklahoma prior, particularly the rape" qualified defendant as a habitual sex offender. Defense counsel did not object to the trial court's reliance on the rape conviction even though the habitual sex offender allegation in the information, like the prior serious felony allegation, referred only to the Oklahoma case as "Kidnapping." Finally, defense counsel did not object when the trial court stated at sentencing that it was imposing sentences for both the serious felony and prison term enhancements because there were two Oklahoma convictions. It is clear from the record that the manner in which the case was pleaded did not mislead defendant to think his Oklahoma case involved only a kidnapping conviction.

Further, the circumstances here are not comparable to those in *Mancebo*, where the Supreme Court found a due process violation in circumstances where the prosecutor alleged a special circumstance based on gun use, and at sentencing the trial court imposed sentence based on an uncharged special circumstance of multiple victims. (*People v. Mancebo*, *supra*, 27 Cal.4th at pp. 738-739, 753.) In *Mancebo* the alleged fact of gun use could not be characterized as expressly or impliedly incorporating the fact of multiple victims. In contrast here, defendant knew from the information that the prosecution was seeking to impose a serious felony enhancement based on the Oklahoma case, and he knew that the Oklahoma case *incorporated both the rape and kidnapping convictions*. Because there is no showing of a due process/notice concern here, it is reasonable to construe the information's characterization of the Oklahoma charge as "Kidnapping" as a shorthand reference to the kidnapping for extortion with intent to rape conviction, as well as the rape conviction.

The prior serious felony enhancement could properly be imposed based on the Oklahoma rape conviction.

### C. *Prison Term Enhancement*

Defendant contends the court could not properly impose both the prior serious felony enhancement and the prior prison term enhancement because they were based on the same Oklahoma kidnapping conviction. He does *not* dispute that *if* the rape conviction can support the serious felony enhancement, then the kidnapping conviction can properly be used to support the prison term enhancement. (See *People v. Ruiz* (1996) 44 Cal.App.4th 1653, 1670 [both serious felony enhancement and prison term

21

enhancement can be imposed when there are different prior convictions supporting each enhancement, even though prior convictions occurred at same time and sentences were served together].)  Based on our holding that the serious felony enhancement is supported by the rape conviction, the court could properly impose the prison term enhancement based on the kidnapping conviction.

## DISPOSITION

The judgment is reversed as to the strike prior conviction finding based on the Oklahoma kidnapping conviction and as to the sentence.  In all other respects the judgment is affirmed.  If the prosecutor elects not to retry the strike prior (see *People v. Ledbetter* (2014) 222 Cal.App.4th 896, 903), or after any such retrial, the court shall resentence defendant.

HALLER, J.

WE CONCUR:


BENKE, Acting P. J.


McINTYRE, J.